UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

A.A-B. individually and on behalf of N.B., a minor,

                              Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                              Defendant.

------------------------------------------------------------------- x

**COMPLAINT**

No. 24 Civ. _____

## PRELIMINARY STATEMENT

1. A.A-B., individually and on behalf of her minor son, N.B., ("Plaintiff"), brings this action against the New York City Department of Education ("DOE" or "Defendant").[1]

2. Plaintiff brings this action seeking injunctive and declaratory relief pursuant to the Individuals with Disabilities Education Improvement Act, ("IDEA"), 20 U.S.C. § 1400 *et seq.* Plaintiff seeks injunctive relief because her son, N.B., will be expelled from his current educational placement on November 14, 2024. Despite having notice of this imminent discharge, Defendant DOE has failed to identify an alternative, appropriate program and placement for him. Plaintiff, however, has identified an appropriate placement that has accepted N.B., but that requires funding before N.B. may

---

[1] Pursuant to Rule 5.2(a)(1) of the Federal Rules of Civil Procedure, 20 U. S. C. § 1417(c), and the Family Educational and Rights and Privacy Act (FERPA), 20 U. S. C. § 1232(g), this Complaint identifies Plaintiffs only by their initials because N.B. is a minor and identifying A.A., his mother, by name necessarily identify N.B. Counsel has provided the Plaintiffs' names and identifying details to counsel for Defendant.

enroll.

3. Due to his serious disability-related behaviors that pose a danger to himself and others, N.B. will suffer irreparable harm if he is without an appropriate educational placement for any significant length of time.

4. N.B. is a ten-year old boy who has been diagnosed with Autism Spectrum Disorder Level 1, Separation Anxiety Disorder, ADHD (Combined Type), and Specific Learning Disorder with impairments in reading (Dyslexia) and mathematics. The Defendant DOE recognizes him as a student with a disability and has classified him as a student with Autism.

5. Due to his disabilities, N.B. has deficits related to academics, inattention, communication and, most concerningly, impulsive behaviors that are often aggressive and dangerous to himself and others.

6. N.B. previously attended a highly structured day school for children with ASD that utilizes a 1:1 Applied Behavior Analysis ("ABA") teaching model. It was among the most restrictive day school placements available. By the end of the 2023-2024 school year, however, N.B.'s behaviors had escalated to the point that he was cursing at his classmates and teachers daily, attempting to run away from school and the school bus, and engaging in inappropriate and provocative sexual language. His behaviors and disability-related aggression were similarly spiking at home: He set a fire in his kitchen, sat on a window ledge with his legs dangling outside, drank bleach in an apparent attempted suicide, and was frequently violent towards his mother.

7. At that point, N.B.'s psychiatrist determined that N.B.'s needs could be addressed only in a therapeutic, residential program. Plaintiff asked Defendant's CSE for

help identifying such a program; however, when no help was forthcoming, Plaintiff unilaterally placed N.B. at Intermountain Residential Treatment Center ("Intermountain") for the 2024-2025 school year

8. N.B. began attending Intermountain on August 5, 2024. Unfortunately, N.B. has demonstrated ongoing aggression toward staff and peers at Intermountain; he has become so dysregulated that staff is unable to get him to remain seated long enough to participate in school or therapy. On October 5, 2024, Intermountain staff informed Plaintiff that the school would expel N.B. on November 14, 2024.

9. On October 18, 2024, Plaintiff notified the Defendant of N.B.'s impending expulsion. She reiterated her May 22, 2024, and June 14, 2024, requests for an urgent IEP meeting. At no time has Defendant responded.

10. For the second time, Plaintiff has had to identify an appropriate residential placement for her volatile and complex son without any assistance from the Defendant. With the help of an educational consultant, Plaintiff has secured an acceptance for N.B. from Shrub Oak International School ("Shrub Oak"), a therapeutic residential program in Mohegan Lake, NY that is tailored to meet the needs of students across the autism spectrum, including those with major behavioral concerns.

11. Shrub Oak will not admit N.B. without guaranteed funding in place. Plaintiff cannot afford to pay Shrub Oak's tuition up front.

12. On November 7, 2024, Plaintiff filed a due process complaint alleging violations of the IDEA and Section 504 and seeking an award for funding for Shrub Oak for the 2024-2025 school year.

13. A temporary restraining order and preliminary injunction ordering Defendant to

fund N.B.'s placement at Shrub Oak are necessary because, without such relief, N.B. will be without a school placement as of November 20, 2024. N.B. will suffer irreparable harm.

## JURISDICTION

14. This is a Complaint pursuant to the IDEA, 20 U.S.C. §§ 1400 *et seq*. This Court has jurisdiction pursuant to 20 U.S.C. §1415(i)(2)(A), 20 U.S.C. § 1415(i)(3)(A) and 28 U.S.C. §§1331 and 1343.

15. Plaintiff is not required to exhaust her administrative remedies under the IDEA for her claims because N.B. is entitled to a placement during the pendency of a due process hearing pursuant to 20 U.S. § 1415(j), and because exhaustion would be futile in light of the current emergency situation.

16. Alternatively, this Court may order an interim placement pursuant to 20 U.S.C. § 1415(i)(2)(C)(iii). Exhaustion of administrative remedies would also be excused as futile due to the instant emergency situation.

17. Plaintiff is an aggrieved party within the meaning of 20 U.S.C. §1415 (i)(2)(A).

18. Plaintiffs have a pending due process proceeding in which they contend, among other things, the Defendant denied N.B. a free appropriate public education by, among other things, failing to provide an appropriate program and placement for the 2024-2025 academic year.

## VENUE

19. Defendant's principal office is located at 52 Chambers Street, New York, NY 10007. Venue in this district is proper under 28 U.S.C. § 1391(b)(1) based on the residence of Defendant and because a substantial portion of the events and omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

20. Plaintiff N.B. is a ten-year-old student (born in 2014) who resides in New York City. He is a child with a disability within the meaning of the IDEA who has received special education services from Defendant.

21. Plaintiff A.A-B. is the mother of N.B.

22. Defendant DOE is a local educational agency (LEA) within the meaning of 20 U.S.C. §1401(19) and is the agency responsible for providing N.B. a free appropriate public education (FAPE).

## STATUTORY SCHEME UNDER THE IDEA

23. The IDEA was adopted in 1975 to ensure that all children with qualifying disabilities receive a free appropriate public education ("FAPE").

24. One purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment and independent living." 20 U.S.C. §1400(d).

25. Educational programs for children with disabilities are designed and implemented through an Individualized Education Program ("IEP"). The contents of the IEP are required by statute. 20 U.S.C. §1414(d)(1)(A). A team of "qualified professionals and the parent of the child" must meet in an IDEA eligibility meeting to determine whether the child is eligible for special education and, if so, what the educational needs of the child might be. 20 U.S.C. §1414(b)(4).

26. IDEA has a two-part definition for a child with a disability. 20 U.S.C. § 1401(3). First, the child must have a listed disability, and the listed disabilities include "emotional disturbance." 20 U.S.C. § 1401(3)(A)(i).

27. Second, by reason of that disability, the student must "need[] special education and related services." 20 U.S.C. § 1401(3)(A)(ii).

28. While a student must be found eligible as a child with a disability under 20 U.S.C. § 1401(3) to be entitled to services under IDEA, 20 U.S.C. §1414(a), (b) & (c), once a student has been found eligible, the IEP must be designed to meet "the child's needs that result from the child's disability to be involved in and make progress in the general education curriculum;" and "meet each of the child's other educational needs that result from the child's disability." 20 U.S.C. § 1414(d)(1)(A)(ii)(aa) & (bb).

29. Whenever there is a disagreement between the parents and a school district regarding the identification, evaluation, or educational placement of the child, or the provision of a FAPE to the child, either party may present a complaint to be heard in an impartial administrative proceeding known as a "due process hearing," conducted by the state educational agency. 20 U.S.C. §§1415(b)(6) & (f).

30. As required by the IDEA, New York State has established an impartial due process hearing procedure. 20 U.S.C. § 1415(f)(1)(A).

31. IDEA provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current placement of the child …" 20 U.S.C. § 1415(j).

**STATEMENT OF FACTS**

32. N.B. has a history of language delays and behavioral difficulties which have impeded his ability to learn. Behavioral difficulties have included significant meltdowns, self-injurious and aggressive behaviors, and lack of safety awareness. N.B. also exhibits anxiety (*e.g.,* difficulty separating from family members and being around a group of people) as well as

significant challenges with hyperactivity, impulsivity, and inattention symptoms. N.B. received speech and language therapy at an early age, and he has received in-home Applied Behavioral Analysis ("ABA") to address his interfering behaviors.

33. N.B. experienced trauma as a young child due to his father's unstable psychiatric condition upon returning from active military duty. N.B.'s father experienced several violent psychotic episodes, some of which N.B. witnessed.

34. N.B.'s own aggressive behaviors began when he was just two years old with him hitting and pulling the hair of classmates and pre-school staff.

35. In January 2019, N.B. was evaluated for the first time at the Autism Center at Seattle Children's Hospital. (Plaintiff and N.B. lived in Seattle at the time). N.B. was diagnosed with ASD, and he demonstrated moderate (Level 2 – requiring substantial support) impairments in social communication, severe (Level 3 – requiring very substantial support) impairments with regards to restrictive/repetitive patterns of behavior, and undetermined cognitive abilities.

36. Following these diagnoses, N.B. was placed in a self-contained special education classroom with a maximum of nine students. Despite these supports, however, he demonstrated significant behavioral difficulties and was unable to be in a classroom with more than a few children at a time. Even when his class size shrunk to just 2-3 students during COVID-19, N.B. required the constant support of a 1:1 paraprofessional. As a kindergartener, N.B. was so highly disruptive and physically aggressive that he was subjected to regular class exclusions and school suspensions due to those disability-related behaviors.

37. In April 2021, Plaintiff and N.B. moved to New York City. Plaintiff wrote to the Defendant on April 30, 2021, notifying Defendant's Committee on Special Education ("CSE") of

the family's move to New York City and requesting special education for N.B. for the 2021-2022 school year, beginning in July 2021.

38. In May 2021, N.B. was evaluated by New York-based neuropsychologist Dr. Ava Dorfman, who diagnosed N.B. with Autism Spectrum Disorder (ASD – Level 1), Separation Anxiety Disorder, ADHD (Combined Type), Conduct Disorder (Childhood Onset Type), and Specific Learning Disorder with impairments in reading (Dyslexia) and in mathematics (Accurate Math Reasoning).

39. Defendant's CSE failed to convene an IEP meeting prior to July 1, 2021, despite Plaintiff's request for such a meeting to secure special education services for her son. The CSE also failed to provide N.B. with a school placement for the 2021-2022 school year. So, upon notice to Defendant, Plaintiff enrolled N.B. at the Titus School, a school that provides a full-time ABA program on a 1:1 basis, for the 2021-2022 school year. Plaintiff filed a due process complaint and Defendant ended up funding N.B.'s enrollment at Titus and home-based ABA therapy for the year.

40. Defendant's CSE also failed to convene an IEP meeting before the start of N.B.'s 2022-2023 school year. Plaintiff again filed a due process complaint, and, on May 24, 2023, Impartial Hearing Officer Andrea Cohen issued a decision ordering the DOE to fund N.B.'s enrollment at Titus for the 12-month 2022-2023 school year, including extended school day services, 10 hours per week of after-school ABA therapy, and four monthly sessions of Parent counseling and training.

41. Defendant developed an IEP for N.B. on July 20, 2022, after the start of the 12-month 2022-2023 school year. Defendant has not convened an IEP meeting or developed an IEP for N.B. since then.

42. The Defendant again failed to offer an appropriate program for the 2023-2024 school year, so N.B. reenrolled at Titus and Plaintiff filed a due process complaint. On July 9, 2024, in case # 268413, IHO Lauren Wagner Pederson found that the DOE failed to offer N.B. a FAPE and ordered the DOE to fund his program at Titus for the 2023-2024 school year.

43. During the 2023-2024 school year, however, N.B.'s aggressiveness and inappropriate behaviors escalated, particularly when he was outside the highly structured Titus milieu.

44. There were several occasions on the bus to/from school in which N.B. eloped from his seat while the bus was moving; yelled, kicked, and hit the bus matron; threatened another student and even put his hands on the bus driver while the bus was in motion.

45. In a harbinger of future troubling, sexualized conduct, while on the bus, N.B. and another student showed each other their genitals. Titus told the parent that N.B. could no longer ride the bus until he had a dedicated paraprofessional.

46. N.B.'s behaviors also escalated at home. His emotional dysregulation, impulsivity, separation anxiety, lack of safety awareness, and disability-related violence all spiked during the second half of the 2023-2024 school year.

47. During this time, N.B.'s out-of-school behaviors included running into the middle of the street, setting paper on fire on his kitchen stove, breaking glass in his bedroom, and sitting on a windowsill and dangling his legs out of the window.

48. N.B. became emotionally dysregulated at home with greater frequency. During his tantrums, N.B. destroyed furniture, and would throw things at and hit his mother, Plaintiff A.A-B. Indeed, N.B.'s violent tantrums were so severe and dangerous that, for fear for her own safety, his mother had to wait outside of the apartment for him to calm down.

N.B., though just 10 years old, is 4'11" and weighs 135 pounds, which is over thirty pounds more than his mother.

49. In May 2024, N.B.'s psychiatrist, Dr. Joshua Choi of Mt. Sinai, concluded that, due to N.B.'s worsening symptoms, a day school was no longer sufficient. To address the challenging behavior stemming from the complex interplay between his ASD-related deficits, ADHD, and anxiety, his psychiatrist determined that N.B. requires a residential school with expertise in students with high-functioning ASD.

50. Plaintiff A.A-B. wrote to the Defendant in May 2024 asking for a meeting to develop an Individualized Education Program ("IEP") incorporating Dr. Choi's recommendations. Plaintiff renewed this request by letter dated June 14, 2024. Defendant did not respond.

51. On June 18, 2024, Plaintiff commenced an impartial hearing pursuant to the IDEA seeking, *inter alia,* direct funding for N.B.'s enrollment at the Intermountain Residential Treatment Center ("Intermountain") for the 2024-2025 school year. On August 29, 2024, in case # 275268, Impartial Hearing Officer Melanie Goldberg found that Defendant had failed to provide N.B. with a FAPE for the 2024-2025 school year and ordered Defendant to fund N.B.'s enrollment at Intermountain.

52. The Defendant did not appeal IHO Goldberg's decision, meaning Intermountain became N.B.'s "last agreed upon placement" under the IDEA's stay-put provision. *See* 20 U.S.C. § 1415(j).

53. As it turns out, Intermountain has struggled to address N.B.'s myriad behaviors and needs. N.B. makes frequent, often graphic, sexual comments to staff and peers, alike. He struggles to accept the limits and boundaries set by the program and reacts with

tantrums that can include cursing, yelling, kicking furniture, and making threats.

54. In or about the end of September or the beginning of October 2024, N.B. made threats to blow off the heads of his peers and to "make a bomb and blow Intermountain up." On October 15, 2024, Intermountain gave Plaintiff 30-days' notice that the Center would discharge N.B.

55. On October 18, 2024, Plaintiff wrote to Defendant's CSE to inform them of N.B.'s imminent expulsion from Intermountain and to request an IEP meeting to identify an appropriate residential placement for him. This was the same request A.A-B. had made in May and June to no avail.

56. N.B. requires immediate placement in a residential school setting with expertise in supporting children with higher functioning ASD who have co-occurring mental illness. N.B. needs the 24-hour structure, onsite therapeutic and psychiatric services, and academic support of a therapeutic boarding school.

57. Given its past failures to respond to similar requests, A.A-B could not rely solely on the Defendant's hoped-for responsiveness. Plaintiff, lacking any connections or expertise regarding residential educational placements that might be suitable for N.B., needed to immediately find an appropriate residential program for her son. She retained the services of Education Consultant Gabriela Deambrosio of EduSphere Consulting to locate an appropriate residential placement.

58. After an exhaustive search, in which the majority of the programs rejected N.B. either due to a lack of available beds or because the program is unable to meet his needs, N.B. was accepted at Shrub Oak International School ("Shrub Oak") on November 5, 2024. Shrub Oak is a therapeutic residential program in Mohegan Lake, NY. It offers educational

opportunities and programs to meet the needs of students across the autism spectrum, with a curriculum based upon evidence-based clinical and academic approaches in ASD education. Critically, Shrub Oak's staff has extensive experience treating students that present with a wide variety of major behavioral concerns.

59. Plaintiff cannot afford to pay the tuition at Shrub Oak, and the school is not willing to admit N.B. without payment. Fortunately, the school is holding N.B.'s seat while these proceedings are underway.

60. On November 7, 2024, Plaintiff filed a due process complaint alleging violations of the IDEA and Section 504 and seeking an award for funding for Shrub Oak for the 2024-2025 school year and seeking pendency in Shrub Oak as well.

61. The New York City Office of Administrative Trials and Hearings, which now hears special education administrative cases, has not yet assigned Plaintiff's November 7 complaint a case number or an Impartial Hearing Officer.

62. N.B.'s "last-agreed upon" placement for pendency purposes is Intermountain, as the last unappealed Findings of Fact and Decision pertaining to N.B. was the August 29, 2024, decision of Impartial Hearing Officer Melanie Goldberg (case # 275268) determining Intermountain to be an appropriate program and placement for N.B.

63. Unfortunately, Intermountain intends to expel N.B. on November 14, 2024, at which time he will have no educational placement at all. Without appropriate academic and therapeutic support, N.B. is an imminent danger to harm himself and/or others, including the Plaintiff.

64. Defendant has been on notice of N.B.'s emergency need for an appropriate placement since Plaintiff informed the CSE by letter dated October 18, 2024. However,

Defendant has failed to respond to Plaintiff at all, much less convene an emergency IEP meeting, or recommend an appropriate placement.

### FIRST CLAIM: IDEA's PENDENCY REQUIREMENT

65. Plaintiff repeats and re-alleges all the above paragraphs as if fully set forth herein.

66. N.B. has a qualifying disability under the IDEA.

67. By virtue of N.B.'s disability, he needs special education services.

68. On August 29, 2024, in case # 275268, Impartial Hearing Officer Melanie Goldberg issued a Findings of Fact and Decision holding that Defendant had denied N.B. a FAPE, that Intermountain was an appropriate placement for N.B., and ordering the Defendant to fund his enrollment there for the 2024-2025 school year. Defendant did not appeal that decision.

69. Pursuant to 20 U.S. § 1415(j), N.B. is entitled to remain in his "then current placement" during the pendency of the administrative due process hearing

70. By operation of law, Intermountain is the last agreed-upon placement.

71. Intermountain will no longer be available to N.B. because he will be expelled as of November 14, 2024, as a result of his disability-related interfering behaviors.

72. Despite Plaintiff's request, Defendant has not provided N.B. with a proposed placement that is substantially similar to his last agreed upon placement. Indeed, Defendant has not provided N.B. any placement at all.

73. Shrub Oak is substantially similar to Intermountain as it is also a residential treatment center that serves students on the autism spectrum with behavioral challenges, and it is able to provide a substantially similar combination of academic programming, related services and behavioral supports to those advertised at Intermountain.

74. Placement at Shrub Oak is necessary for N.B. to have a pendant placement under

20 U.S.C. § 1415(j).

75. Where, as here, "the school [previously] providing the child's pendency services is no longer available and the school district either refuses or fails to provide pendency services to the child," the Court may grant injunctive relief to modify the student's placement pursuant to the equitable authority provided in 20 U.S.C. § 1415(i)(2)(B)(iii). *De Paulino v NY City Dept. of Educ.*, 959 F3d 519, 534, n. 65 (2d Cir. 2020).

76. The Plaintiff cannot afford to pay for a residential program for N.B., and Shrub Oak will not permit N.B. to enroll absent contemporaneous funding.

77. Defendant has not yet indicated any position with respect to the pendency request contained in Plaintiff's November 7, 2024, due process complaint.

78. N.B. has no prospect of educational progress without a residential placement.

## SECOND CLAIM: IDEA

79. Plaintiff repeats and re-alleges all the above paragraphs as if fully set forth herein.

80. N.B. is entitled to a free appropriate public education pursuant to the IDEA.

81. Defendant has not created an IEP for N.B. since July 20, 2022, and did not offer him a brick-and-mortar school placement for the 2024-2025 school year.

82. As already held by IHO Goldberg in case no. 275268, Defendant failed to provide N.B. a FAPE for the 2024-2025 school year.

83. This Court has authority to provide injunctive relief "to modify a student's placement pursuant to the equitable authority provided in 20 U.S.C. § 1415(i)(2)(B)(iii); *see De Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 534, n.65 (2d Cir. 2020).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the Court enter a temporary restraining order, and a

preliminary and permanent injunction granting the following relief:

    a.    Award temporary, preliminary, and permanent injunctive relief requiring the Defendant DOE to fund N.B.'s placement at Shrub Oak for special education and therapeutic services, for the 2024-2025 school year pending the decision in the due process hearing filed on November 7, 2024.

    b.    Award attorney fees and litigation costs which Plaintiff has incurred and/or will incur in prosecuting this action, and which they have incurred and/or will incur in the administrative proceedings below; and

    c.    Award such other relief as the Court deems appropriate.

Dated: November 22, 2024

                  Respectfully submitted,

                  Law Office of Michelle Siegel, PLLC
                  *Attorneys for Plaintiffs*

              By: /s/ Lesley Berson Mbaye
                  Lesley Berson Mbaye, Esq.
                  *Of Counsel*
                  Law Office of Michelle Siegel, PLLC
                  604 Hoagerburgh Rd.
                  Wallkill, NY 12589
                  (347) 480-9246
                  lesleyberson@msiegelaw.com