UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

A.A-B. individually and on behalf of N.B., a minor,

                     Plaintiffs,

   -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                     Defendant.

-------------------------------------------------------------------- x

**DECLARATION OF A.A-B.**

No. 24 Civ. _____

I, A.A-B., hereby declare, pursuant to 28 U.S.C. §1746 and subject to the penalties of perjury, that the following statements are true and correct:

1. I am N.B.'s mother.

2. N.B. has diagnoses of Autism Spectrum Disorder Level 1, Separation Anxiety Disorder, ADHD (Combined Type), and Specific Learning Disorder with impairments in reading (Dyslexia) and mathematics. He has been classified as a student with Autism by the Defendant's Committee on Special Education ("CSE").

3. Due to his disabilities, N.B. has deficits related to academics, inattention, and communication. Most troubling, he has impulsive behaviors that are often aggressive and even dangerous.

4. N.B. began presenting with aggressive behaviors when he was just two years old. He was expelled from his preschool program due to repeated incidents of hitting and pulling the hair of peers and staff. These aggressive behaviors continued at school and at home throughout his preschool years. In kindergarten, N.B. was placed in a large classroom that did not have sufficient supports for him. N.B. was highly disruptive, physically aggressive, and was subjected

to regular class exclusions and school suspensions due to disability-related behaviors.

5. During the 2021-2022 school year, when he was in second grade, I enrolled N.B. at the Titus School ("Titus"). At Titus, he participated in a 1:1 Applied Behavior Analysis ("ABA") program, the most restrictive day placement available. Titus provided N.B. with intensive structure, supports and consistency, which, for several years, was enough to maintain N.B.'s availability for classroom learning. He attended Titus through June 2024.

6. Unfortunately, over the course of the last year, N.B.'s behaviors have substantially worsened. Due to his emotional and behavioral disabilities, N.B. is regularly combative, non-compliant, aggressive, and violent. He refuses nearly every request I make of him, which made even mundane activities – like getting him ready for school – a confrontation. When my son would become dysregulated like that, he destroyed property in the apartment, cursed at me, and even hit and threw things at me. At times, these tantrums were so severe, and I felt so unsafe that I left the apartment and waited right outside the door for N.B. to calm down.

7. I am 5'3" and 105 pounds, while N.B. is 4'11" and about 135 pounds; I am no longer capable of physically restraining him on my own. Many times, my neighbors and my building superintendent have intervened to help me.

8. During the 2023-2024 school year, these kinds of tantrums and dysregulated behaviors became more frequent, particularly on the bus to and from school. Just a few weeks into the school year, I was informed that during bus rides N.B. was regularly screaming, threatening other students and bus staff, and putting his hands on other students. On one occasion, N.B. even put his hands on the bus matron and the bus driver, creating a danger to everyone aboard. N.B. was not allowed to return to the school bus until I was able to arrange for additional supports.

9. I was able to secure a paraprofessional to accompany N.B. on the bus but, sadly, the

behaviors remained. In December of 2023, N.B. and a classmate showed each other their genitalia on the bus. That same day, I learned that N.B. and another child were making up stories in which his school was bombed and then blew up. I immediately informed N.B.'s school.

10. N.B. also has a lack of safety awareness, which has become increasingly dangerous as he's gotten bigger, faster and stronger. In the past year, N.B. has run into the middle of the street, put his hand into a fire, and dangled his legs out the window of an apartment building. One night, when I thought he was sleeping, N.B. purposely broke a glass picture frame and took a shard of broken glass to cut up his bedsheets. He also cut himself while doing this. He needs constant one-to-one supervision for safety purposes.

11. In the spring of 2024, N.B. told other students on the bus that they were sexy and that he wanted to see them naked. He attempted to kiss another student. In school, he was cursing excessively, including at his teachers.

In May 2024, N.B.'s psychiatrist, Dr. Joshua Choi, MD, found N.B. to be at moderate risk of accidental harm to himself, and that the level of supports in place at Titus and at home were no longer sufficient. Dr. Choi found that N.B.'s challenging behavior stems from N.B.'s Autism-related social and communication deficits in combination with his ADHD and anxiety. Dr. Choi advised that N.B. required placement at a residential school with expertise working with children with higher-functioning Autism Spectrum Disorder who have co-occurring mental health needs.

12. On May 22, 2024, I sent a letter to Defendant's CSE informing explaining that due to N.B.'s increase in self-injurious and maladaptive behaviors, his psychiatrist advised that he required placement in a Residential Treatment Center. I requested a meeting to develop an Individualized Education Program ("IEP") to recommend such a placement.

13. The CSE did not respond to this letter. The CSE did not schedule an IEP meeting or

recommend a school placement for the 2024-2025 school year. In fact, the CSE has not held any IEP meetings for N.B. since 2022.

14. On June 14, 2024, I sent another letter to the CSE. I renewed my request for an IEP meeting. This time, I advised the CSE that if no placement was offered, I would work to identify an appropriate Residential Treatment Center for N.B. and seek funding through an impartial hearing.

15. I hired Gabriela Deambrosio of EduSphere Consulting to help identify and apply to potential placements for N.B. We ultimately investigated over ten programs before identifying Intermountain as a placement that had the clinical, therapeutic, and academic capacities to meet my son's needs.

16. On June 18, 2024, I filed a due process complaint alleging that the Defendant had not held an IEP meeting for my son for the 2024-2025 school year, which denied him a free appropriate public education. I sought direct funding for his stay at Intermountain.

17. On July 22, 2024, N.B. said he wanted to kill himself. I immediately contacted his psychiatrist, Dr. Choi, to schedule an evaluation at the hospital. Later that day, N.B. attempted to drink bleach. I rushed N.B. to the hospital, where he was admitted and remained for several days before being discharged on August 1, 2024.

18. On August 5, 2024, I brought N.B. to Intermountain. I had borrowed money from friends and family to pay the initial deposit of $16,500, which was required to secure his place there.

19. The hearing was held on August 6, 2024, before Impartial Hearing Officer Melanie Goldberg (case no. 275268). The DOE did not even appear.

20. On August 29, 2024, IHO Goldberg issued her Findings of Fact and Decision. She held that the DOE had denied N.B. a free appropriate public education, that N.B. requires a residential

placement and that Intermountain was an appropriate such placement for my son, and she ordered the DOE to fund his stay at Intermountain for the 2024-2025 school year.

21. On October 15, 2024, to my great dismay and disappointment, Intermountain informed me that it could no longer accommodate or appropriately manage my son's needs and behaviors. They informed me they would discharge N.B. in approximately 30 days. They have since clarified that he may stay there until November 20, 2024.

22. On October 18, 2024, my attorney wrote and informed the CSE of this emergency and renewed my request for an IEP meeting as soon as possible. The CSE has still not responded.

23. On November 7, 2024, having not heard anything from the Defendant in response to my latest letter, I filed a due process complaint seeking, among other things, pendency at Shrub Oak (as Intermountain will no longer be available) and funding for N.B.'s placement there for the rest of the 2024-2025 school year. That case has been designated number 287949 by the New York City Office of Administrative Trials and Hearings ("OATH") Special Education Hearings Division.

24. Meanwhile, I was again searching for an appropriate residential placement that can keep my son safe. I again hired EduSphere Consulting to help find an appropriate placement that could meet N.B.'s current needs.

25. N.B. has been accepted by Shrub Oak International School ("Shrub Oak"), a therapeutic residential program in Mohegan Lake, NY that is tailored to meet the needs of students across the autism spectrum, including those with major behavioral concerns.

26. However, Shrub Oak will not let my son enroll without guaranteed funding in place. His tuition at Shrub Oak will be $11,500 per week due to his need for round-the-clock, one-to-one support. I cannot afford to pay Shrub Oak's tuition up front. Fortunately, the school is temporarily holding a place for N.B.'s during this proceeding.

Dated: New York, New York
      November 20 2024

_____
          A.A-B.