## FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case Number: | 275268 |
| Student's Name: | N█ B█ |
| School Location: | NYC Dept. of Ed., District #2 |
| Impartial Hearing Officer: | Melanie Goldberg, Esq. |
| Date of Filing: | 6/18/2024 |
| Hearing Requested by: | Parent |
| Date of Hearing: | 8/6/2024 |
| Record Close Date: | 8/29/2024 |
| Date of Decision: | 8/29/2024 |
| Time Sensitive: | Yes |

Findings of Fact and Decision                                                    2
Case No. 275268

## NAMES AND TITLES OF PERSONS WHO APPEARED ON AUGUSST 6, 2024:

For the Student:
Peter Herold, Esq. (hereinafter referred to as "Parent's Counsel")
A█████ A█████-B████n (hereinafter referred to as "Parent")

For the Department of Education ("DOE"):
No Appearance (hereinafter referred to as "District's Representative")

## BACKGROUND AND PROCEDURAL HISTORY

The Parent, through counsel, filed a Due Process Complaint (DPC) on June 18, 2024. Parent alleges the Department of Education (DOE or District) failed to offer Student a free and appropriate public education (FAPE) for the 2024-2025 school year.[1] Parent also sought relief under Section 504 of the Rehabilitation Act.

The DPC alleged, among other things, that the DOE failed to hold an IEP meeting for the 2024-2025 school year and failed to provide Student an appropriate school placement.[2] By way of relief, Parent seeks an award of direct funding for Student's tuition at Residential Placement during the 2024-2025 school year.

I was appointed to preside over this case on June 20, 2024. Parent's counsel appeared, virtually, for a Due Process Hearing. There was no appearance from DOE.[3] Parent disclosed exhibits A-T before the hearing, and they were admitted into the record. The Parent called two witnesses, Director of Private Placement and Parent.

In light of the foregoing, and as more fully discussed below, I find that: a) DOE failed to provide Student with a FAPE for the 2024-2025 school year, b) Private School provides educational instruction specifically designed to meet Student's unique needs, and c) the equities support the Parent's requested relief of tuition.

During the 2024-2025 school year, Student is a 10-year-old classified by the DOE's Committee on Special Education ("CSE") as a student with a disability.

---

[1] P. Ex. A.
[2] *Id*.
[3] Tr. P. 16.

## LEGAL FRAMEWORK AND ANALYSIS

Burden

School districts have the burden of proof, including the burden of persuasion and burden of production, in IDEA due process hearings, except that a parent, or person in a parental relationship, seeking tuition reimbursement for a unilateral parental placement has the burden of persuasion and burden of production on the appropriateness of such placement.[4]

Prong I

The IDEA provides that children with disabilities are entitled to a FAPE.[5] A FAPE consists of specialized education and related services designed to meet a student's unique needs, provided in conformity with a comprehensively written IEP.[6] A school district has offered a student a FAPE when (a) the board of education complies with the procedural requirements set forth in the IDEA; and (b) the IEP is developed through the IDEA's procedures and is reasonably calculated to enable the student to receive educational benefits.[7] To meet its substantive FAPE obligations, a district must offer a student an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."[8]

Regarding Prong I of the *Burlington/Carter* standard, the DOE failed to meet its burden, for the 2024-2025 school year. The DOE did not present any witness testimony or documentary evidence.

In this action, the DOE did not submit Student's IEP or proof that an appropriate school placement was offered to Student. Parent made numerous allegations in the DPC that the DOE did

---

[4] NYS Educ. Law § 4404(1)(c).
[5] *See* 20 U.S.C. § 1400 (d)(1)(A).
[6] 34 C.F.R. § 300.13.
[7] *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982).
[8] *Endrew F. v. Douglas County Sch. Dist. RE-1*, 137 S.Ct. 988, 999 (2017).

not challenge. For instance, Parent alleged the DOE did not hold a CSE meeting for the 2024-2025 school year or offer Student a school placement. No IEP, notice of IEP meeting, school placement letter, or other document showing DOE offered Student a placement was entered into the record.

Parent submitted a "Ten Day Notice" showing Parent requested DOE hold an IEP meeting for the 2024-2025 school year, and stating if DOE did not offer a placement for Student, Parent would seek a residential placement for Student.[9] DOE did not provide evidence of a response to Parent's letter.

I hold the DOE did not provide Student a FAPE for the 2024-2025 school year.

## Prong II

A private school placement must be "proper under the Act."[10] This means that the private school must offer an educational program which met Student's special education needs.[11] Parents seeking reimbursement "bear the burden of demonstrating that their private placement was appropriate, even if the IEP was inappropriate.[12] "Subject to certain limited exceptions, 'the same considerations and criteria that apply in determining whether the [s]chool [d]istrict's placement is appropriate should be considered in determining the appropriateness of the parents' placement.'"[13]

Parents need not show that the placement provides every special service necessary to maximize Student's potential.[14] When determining whether a unilateral placement is appropriate, "[u]ltimately, the issue turns on" whether the placement is "reasonably calculated to enable the

---

[9] P. Ex. B.

[10] *See Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 12, 15 (1993); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370 (1985).

[11] *See Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112, 115 (2d Cir. 2007); *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998).

[12] *See Gagliardo*, 489 F.3d at 112.

[13] *See Gagliardo*, 489 F.3d at 112, quoting *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 364 (2d Cir. 2006). 459 F.3d at 364-65.

19. 16. *Frank G.*, 459 F.3d at 364-65

child to receive educational benefits."[15] A private placement is appropriate if it provides instruction specially designed to meet a student's unique needs.[16]

The Second Circuit has set forth the standard for determining whether parents have carried their burden of demonstrating the appropriateness of their unilateral placement. No one factor is necessarily dispositive in determining whether parents' unilateral placement is reasonably calculated to enable the child to receive educational benefits. Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of circumstances in determining whether that placement reasonably serves a child's individual needs. To qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential. They need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a student, supported by such services as are necessary to permit the child to benefit from instruction.[17]

Student is enrolled at Residential Placement and attends classes there for the 2024-2025 school year.[18]

From 2021 through June of 2024, Student attended a Private Placement consisting of a 1:1 ABA program, which was "the most restrictive day placement available."[19] Parent testified "over the course of the last year, [Student's] behaviors have substantially worsened."[20]

---

[15] *Frank G.*, 459 F.3d at 364; *see Gagliardo*, 489 F.3d at 115.
[16] 20 U.S.C. § 1401(29); Educ. Law § 4401(1); 34 CFR 300.39(a)(1); 8 NYCRR 200.1(ww); *Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 386 (2d Cir. 2014).
[17] *Gagliardo*, 489 F.3d at 112, quoting *Frank G.*, 459 F.3d at 364-65.
[18] P. Ex. R and T-5.
[19] P. Ex. T-2.
[20] *Id.*

The record shows over the course of the 2023-2024 school year, Student's behavior worsened. Parent testified Student is "regularly combative, non-compliant, aggressive, and even violent. The frequency and severity of [Student's] outbursts have reached a point where I simply cannot control him or maintain adequate safety."[21]

Parent testified about Parent's difficulties getting Student to school, including incidents on the school bus.[22] The difficulties remained even when Student had a paraprofessional on the bus.[23] At Student's previous placement, Parent testified Student "was cursing excessively in the classroom and even directing profanity at his teachers. They had to move [Student] to a different room to complete [Student's] work, and [Student] responded with even more profanity and attempted to elope."[24]

Parent testified that Parent is concerned for Student's safety because of incidents including setting a fire on the stove in which Student was taken to the hospital,[25] an incident that Student deliberately broke a picture frame and used the glass to cut Student's sheets,[26] and Student attempted to drink bleach and was hospitalized for several days.[27]

Student's psychiatric recommendation is for a "residential school setting with unique expertise working with children with higher functioning ASD who have co-occurring mental health needs. [Student] needs the 24-hour structure, onsite therapeutic and psychiatric services, and academic support of a therapeutic boarding school."[28]

---

[21] *Id.*
[22] P. Ex. K.
[23] P. Ex. T-3, K, and O.
[24] P. Ex. T-4 and P.
[25] P. Ex. G.
[26] P. Ex. T-4.
[27] P. Ex. T-5.
[28] P. Ex. D-1.

Director of Private Placement testified Residential Placement is a "therapeutic boarding school based in Helena, MT. Our intensive Residential Services are designed for girls and boys, ages 4-13 on admission. Students are treated and educated on a 36-acre campus nestled in the foothills of the Rocky Mountains in Helena, MT. Our student population presents with Generalized Anxiety Disorder, Reactive Attachment Disorder, Post Traumatic Stress Disorder, Depression, and Autism Spectrum Disorder among other diagnoses."[29] Director of Private Placement testified Residential Placement "has accreditations from the Counsel on Accreditation ("COA"), and Cognia. [Residential Placement] is a member of the National Association of Therapeutic Schools and Programs ("NATSAP") and has a gold seal as a research designated program through NATSAP."[30]

Director of Private Placement testified classrooms at Residential Placement have a "certified teacher experienced in dealing with students with emotional difficulties and two trained mental health support staff. Each classroom must have a minimum of a 1:6 staff to student ratio, though we typically operate at a 1:4 ratio."[31] Residential Placement employees certified teachers, a registered nurse, licensed therapists, counselors, and support staff.[32] Director of Private Placement testified in detail about the professionals working at Residential Placement including their qualifications and licenses.[33]

Director of Private Placement testified in the last few months, Student "…has shown substantial behavioral decline as evidenced by increased emotional dysregulation, aggression towards his mother, impulsivity, poor sleep, and increased separation anxiety. [Student's] previous

---

[29] P. Ex. S-2 and S-3.
[30] *Id.*
[31] *Id.*
[32] P. Ex. S-4.
[33] P. Ex. S-7.

supports both at school and at home were insufficient for [Student's] increasingly challenging behaviors and his current level of need. [Student] reached a point where he is unable to perform activities of daily living.[34] As a result, Student will have "…constant one-to-one supervision during waking hours and will not be alone until it is deemed safe by our clinical staff."[35] Director of Private Placement testified Student's academic curriculum will be individually tailored to Student's abilities.[36]

Parent testified credibly that Parent chose Residential Placement because of the clinical support team, there was a small group of students, and the students in the program were checked on by staff throughout the night.[37] Parent further testified Parent chose this residential program because the residential program had successfully treated students that have similar diagnoses to Student.[38]

The evidence demonstrates Student requires a residential program. I find the Residential Program provides Student with instruction specifically designed to meet Student's unique needs for the 2024-2025 school year. Furthermore, the evidence establishes that Residential Program's instruction is "reasonably calculated to enable the child to receive educational benefits."[39] I hold that Parent has met their burden under Prong II of the *Burlington/Carter* standard.

Equities

Even if a parent establishes a right to reimbursement under the IDEA, "courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant."[40] In making

---

[34] P. Ex. S-11
[35] P. Ex. S-12.
[36] *Id.*
[37] Tr. P. 39.
[38] *Id.*
[39] *Frank G.*, 459 F.3d at 364.
[40] *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246-47, (2009).

that equitable determination, a hearing officer may consider many factors, including, inter alia, whether a parent's unilateral withdrawal of her child from the public school was justified, whether the parent provided the Department with adequate withdrawal notice, whether the amount of private-school tuition was reasonable, whether the parent should have availed herself of need-based scholarships or other financial aid from the private school, and whether there was any fraud or collusion in generating (or inflating) the tuition to be charged to the Department, or whether the arrangement with the school was fraudulent or collusive in any other respect.[41]

In this action, Parent timely sent a "Ten-Day Notice" listing Parent's concerns for the 2024-2025 school year.[42] Therein, Parent detailed specific concerns, and gave DOE notice of their intention to unilaterally place Student in a Residential Program.[43] There is no evidence the Parent failed to cooperate with the CSE at any point.

As to the inquiry regarding Parent's income, "the exercise of rights under the IDEA cannot be made to depend on the financial means of a disabled child's parents."[44] After all, what the IDEA guarantees is a *free* appropriate public education to *all* children with disabilities regardless of their parents' income.[45] To require parents to fund their children's education in the first instance, unless they demonstrate an inability to pay "skews the equities underlying the IDEA and cases applying that law. Direct payment to the school simply requires the DOE to belatedly fund expenses that it was obligated to pay all along."[46] Thus, where, as here, a private school is willing to enroll Student and the risk that it will take years to obtain payment, parents who satisfy the Burlington factors

---

[41] *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 461 (2d Cir. 2014).

[42] P. Ex. B.

[43] *Id.*

[44] *Ferreira v. New York City Dep't of Educ.*, 2023 U.S. Dist. LEXIS 43032, at * 27 (S.D.N.Y. Mar. 14, 2023) (citation omitted).

[45] *See* 20 U.S.C. § 1400(d)(1)(A) (emphasis added).

[46] *E.M.*, 758 F.3d at 453.

have a right to retroactive direct tuition payment.[47] However, notwithstanding this, Parent has submitted a "Tax Form" showing that Parent is unable to pay the tuition.[48]

<u>Section 504 of the Rehabilitation Act</u>

Section 504 prohibits discrimination against qualified students with a disability. 29 U.S.C. § 794(a). Section 504 states, "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Section 504 requires that school districts provide qualified students with a "free appropriate public education… regardless of the nature or severity of the person's [disability]." 34 C.F.R. § 104.33(a). Under Section 504, an appropriate education means "the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to [504's] procedures." 34 C.F.R. § 104.33(b).

Section 504 requires that recipients of federal funds that operate public educational programs or activities must "establish and implement . . . a system of procedural safeguards that includes...an impartial hearing with opportunity for participation by the [student's] parents or guardian and representation by counsel, and a review procedure." 34 C.F.R. § 104.36. Impartial Hearing Officers have authority to hear claims under Section 504 of the Rehabilitation Act if delegated the authority by the Local Education Agency (LEA). The New York City Department

---

[47] See *Mr. & Mrs. A.*, 769 F. Supp. 2d at 428.
[48] P. Ex. F.

of Education delegated to OATH the authority to adjudicate due process complaints under Section 504.[49]

 I find that the Parent's 504 claims are subsumed within the framework of the IDEA.

Transportation

 The IDEA requires that a school district provide transportation for a child with a disability "if that service is necessary for a disabled child 'to benefit from special education,' even if that child has no ambulatory impairment that directly causes a 'unique need' for some form of specialized transport."[50] Transportation may be deemed necessary "if in its absence a disabled child in private school would be denied 'a genuine opportunity for equitable participation in [a special education program]', . . . or special education program benefits "comparable in quality, scope, and opportunity for participation . . . [to those provided for] students enrolled in public schools.'"[51]

 In addition, New York State Education Law defines special education as "specially designed instruction . . . and transportation, provided at no cost to the parents to meet the unique needs of a child with a disability," and requires school districts to provide disabled students with "suitable transportation to and from special classes or programs."[52] The requested transportation must also be "reasonable when all of the facts are considered."[53] In a guidance document, the State Education Department has indicated that the CSE should consider *and document* a student's mobility, behavior, communication, physical, and health needs when determining whether or not

[49] NYC Exec. Order No. 20 (June 24, 2022), www1.nyc.gov/assets/oath/downloads/pdf/EO-20-final-rehab-Act-504-delegation-Signed.pdf.
[50] *Donald B. by Christine B. v. Board of Sch. Commissioners of Mobile County, Ala.*, 117 F.3d 1371, 1374 (11th Cir 1997) (citations omitted).
[51] *Id.* at 1375 (internal citations omitted).
[52] NYS Educ. Law §§ 4401(1); 4402(4)(a); *See also* NYS Educ. Law § 4401(2); 8 NYCRR § 200.1(ww).
[53] *Alamo Heights Indep. Sch. Dist. v. State Bd. of Educ.*, 790 F.2d 1153, 1160 (5th Cir. 1986).

a student requires transportation as a related service, that the IEP "must include specific transportation recommendations to address each of the student's needs, as appropriate," and that when determining a student's special transportation needs, such as the need for door-to-door transportation, it must document them.[54] Other relevant considerations may include the student's age, ability to follow directions, ability to function without special transportation, the distance to be traveled, the nature of the area, and the availability of private or public assistance.[55]

In this matter, Parent requests an Order directing the DOE to reimburse Parent for the costs of transporting Student to and from the Residential Placement Parent in an amount not to exceed $325 a day, up to four days at a time, up to once a quarter, for transportation including airfare, car rental, lodging, and meal costs for Student and Parent for arrival, departure, and family visits to Private School as recommended by the program. I find that the Parent is entitled to the relief requested. Student needs transportation in order to attend the Residential Placement and receive special education in an appropriate setting.

The DOE did not argue Student is not entitled to transportation. The record shows Student received transportation to private placement the previous school year. The DOE did not contest the reasonableness of Parent's transportation request.

Relief

By way of relief, the Parent seeks tuition directly paid to Private School for the 2024–2025 school year in monthly installments. Parent's counsel submitted an acceptance letter and contract with Private School.[56] The tuition for Private School is $550 a day.[57]

---

[54] "*Special Transportation for Students with Disabilities*," VESID Mem. [Mar. 2005], available at http://www.p12.nysed.gov/specialed/publications/policy/specialtrans.pdf).
[55] *See Donald B.*, 117 F.3d at 1375.
[56] P. Ex. E and R.
[57] P. Ex. R.

The District did not show the tuition for Private School or Parent's request for transportation costs to be unreasonable. I find that Parent cooperated with the DOE for the 2024-2025 school year. I hold that the equities support Parent's claim for tuition and transportation.

## **ORDER**

NOW, THEREFORE, IN LIGHT OF THE ABOVE FINDINGS OF FACT, IT IS HEREBY **ORDERED THAT**:

(1) The DOE shall directly fund Private School tuition for the 2024-2025 school year, which shall be paid by DOE in monthly installments, by the first of each month, subject to recoupment, at an amount of $550 per day.

(2) The DOE shall reimburse Parent in the amount of $16,500 for tuition paid to Private School, within 35 days of this order.

(3) The DOE shall reimburse Parent an amount not to exceed $325 a day, up to four days at a time, up to once a quarter, for transportation including airfare, car rental, lodging, and meal costs for Student and Parent for arrival, departure, and family visits to Private School as recommended by the program.

**SO ORDERED.**

Dated: August 29, 2024

*(Signed Electronically: MG)*
Impartial Hearing Officer
Melanie Goldberg, Esq.

## NOTICE OF RIGHT TO APPEAL

Within 40 days of the date of this decision, the parent and/or the Public School District has a right to appeal the decision to a State Review Officer (SRO) of the New York State Education Department under section 4404 of the Education Law and the Individuals with Disabilities Education Act.

If either party plans to appeal the decision, a notice of intention to seek review shall be personally served upon the opposing party no later than 25 days after the date of the decision sought to be reviewed.

An appealing party's request for review shall be personally served upon the opposing party within 40 days from the date of the decision sought to be reviewed. An appealing party shall file the notice of intention to seek review, notice of request for review, request for review, and proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete. The rules of procedure for appeals before an SRO are found in Part 279 of the Regulations of the Commissioner of Education. A copy of the rules in Part 279 and model forms are available at http://www.sro.nysed.gov.

## APPENDIX A: EVIDENCE ADMITTED INTO THE RECORD

### DOE Witnesses

None

### Parent Witnesses


Meegan Bryce

### DOE's Exhibits

None

### Parent's Exhibits

| EXHIBIT | DATE | NAME | PAGES |
|---------|------|------|-------|
| A | 6/18/24 | Hearing Request | 6 |
| B | 6/14/24 | Ten Day Notice | 3 |
| C | 7/8/24 | Determination Report | 1 |
| D | 5/6/24 | Psychiatric Recommendation | 2 |
| E | 6/17/24 | Intermountain Acceptance Letter | 2 |
| F | 5/11/21 | Tax Form | 2 |
| G | 12/4/23 | Letter From Psychiatrist | 1 |
| H | 7/26/23 | Email From Titus | 2 |
| I | 12/4/23 | Email From Titus | 1 |
| J | 12/13/23 – 12/21/23 | Correspondence With Titus | 5 |
| K | 7/10/23 - 7/27/23 | School Bus Incident Reports | 7 |
| L | 5/24/24 | Email to Dr. Choi | 1 |
| M | 6/13/24 | Email to Dr. Choi | 1 |
| N | 4/9/24 | Email To Titus | 1 |
| O | 4/15/24 | School Bus Incident Report | 1 |
| P | 5/8/2024 | Email to Titus | 1 |
| Q | undated | Meegan Bryce CV | 3 |
| R | 7/30/24 | Intermountain Contract | 7 |
| S | 8/2/2024 | Affidavit of Meegan Bryce | 13 |

### IHO Exhibits

| EXHIBIT | DATE | NAME | PAGES |
|---------|------|------|-------|
| I | 7/29/2024 | Prehearing Summary and Order | 3 |

## APPENDIX B- REDACTION IDENTIFICATION PAGE

| Redacted Information | Term Used In FOFD |
|---|---|
| N█████B███ | Student |
| A█████A████-B█████ | Parent |
| Peter Herold | Parent's Counsel |
| No Appearance | District or DOE |
| Meegan Bryce | Parent's witness or Director of Private placement |
| Intermountain | Residential Placement |