OATH SEHD CASE #287949

# LAW OFFICE OF
# MICHELLE SIEGEL

646.530.2130     MICHELLESIEGEL@MSIEGELAW.COM     WWW.MSIEGELAW.COM

November 7, 2024

VIA EMAIL
Ms. Stacey Reeves
Impartial Hearing Office
New York City Department of Education
131 Livingston Street
Room 201
Brooklyn, NY 11201

| | |
|---|---|
| Name of Student: | N█ B█ |
| Date of Birth: | ██ 2014 |
| OSIS#: | ██ |
| Home Region: | 10 |
| Translator Needed: | No |

Dear Ms. Reeves,

I am hereby requesting an Impartial Hearing on behalf of the family of the above-named Student ('Student'). Michelle Siegel, Esq. will be representing this family at the hearing.

In compliance with 20 U.S.C. § 1415(b)(7)(B), we are hereby providing the following information:

| | |
|---|---|
| Name of Student ('Student') | N█ B█ |
| Residence: | ██ New York, NY ██ |

| | |
|---|---|
| Name of School Attending ('SCHOOL') | Shrub Oak International School |

*Description of the nature of the problem of the child relating to such proposed initiation of change, including the facts relating to such problem:*

Ex. 2 - 001

1. N▮ is a disabled child who was denied access to a free appropriate public education in the least restrictive environment (hereafter referred to as 'FAPE') that is designed to meet his unique needs and prepare him for further education, employment, and independent living as contemplated in 20 U.S.C. § 1400(d)(1)(A) and Section 504 in the 2024-2025 school year by the New York City Department of Education ('DOE') by way of its Committee on Special Education ('CSE').

2. N▮ is ten years old and about to be involuntarily discharged from Intermountain Residential Treatment Center. N▮ has diagnoses of Autism Spectrum Disorder ("ASD"), Separation Anxiety Disorder, and ADHD (Combined Type). N▮ has been given the classification of Autism by the CSE.

3. N▮ has a history of language delays and behavioral difficulties which have impeded his ability to learn. Behavioral difficulties have included significant meltdowns, self-injurious and aggressive behaviors, and lack of safety awareness. N▮ also exhibits anxiety (e.g., difficulty separating from family members and being around a group of people) as well as significant challenges with hyperactivity, impulsivity, and inattention symptoms. N▮ received speech and language therapy at an early age, and he has received in-home Applied Behavioral Analysis ("ABA") to address his interfering behaviors.

4. Due to the Parent's concerns for his functioning, she referred N▮ for a psychological evaluation, which was conducted in January 2019, through the Autism Center at Seattle Children's Hospital. At that time, N▮ was diagnosed with ASD, and he demonstrated moderate (Level 2 – requiring substantial support) impairments in social communication, severe (Level 3 – requiring very substantial support) impairments with regards to restrictive/repetitive patterns of behavior, and undetermined cognitive abilities.

5. Following his evaluation, N▮ was placed in a self-contained special education classroom with a maximum of nine students. Despite these supports, however, N▮ demonstrated significant behavioral difficulties in relating to peers at school (i.e., hitting, pulling hair) and was unable to be in a classroom with more than a few children at a time. In this setting, the other students shared a paraprofessional while N▮ required a full-time 1:1 paraprofessional. During COVID-19, N▮'s class size included only 2-3 students; however, N▮ still required the constant support of his 1:1 paraprofessional.

6. On April 30, 2021, the Parent sent a letter notifying the CSE of the family's recent move to New York City and of her request for special education services for N▮ for the 2021-2022 school year, beginning in July 2021. At that time, the Parent provided her consent for any additional, necessary assessments/evaluations as well as for release of N▮'s records from his previous school in Washington State. The Parent also informed the CSE that she had referred N▮ for a comprehensive

neuropsychological evaluation that would be made available to the CSE upon completion.

7. In N▮▮'s neuropsychological evaluation, conducted in May 2021 by Dr. Ava Dorfman, he was diagnosed with Autism Spectrum Disorder (ASD – Level 1), Separation Anxiety Disorder, ADHD (Combined Type), Conduct Disorder (Childhood Onset Type), and Specific Learning Disorder with impairments in reading (Dyslexia) and in mathematics (Accurate Math Reasoning).

8. The evaluation made clear that N▮▮ required placement in a full-time, specialized educational program grounded in behaviorally based learning principles. He required a 12-month program that provided interventions to facilitate safe, age-appropriate social and adaptive skills integrated throughout the curriculum. He required an educational program including a classroom setting that utilized evidence-based approaches and was highly structured with a small student to teacher ratio to allow for ample supervision and individualized supports to help him readily engage in classroom activities. He also required home-based Applied Behavior Analysis ("ABA") Therapy.

9. On June 21, 2021, the Parent sent a letter informing the CSE that while she was looking forward to discussing N▮▮'s needs at his upcoming IEP meeting, she would enroll N▮▮, absent an appropriate program and placement, at the Titus School for the 2021-2022 school year, beginning in July, and seek funding at public expense for his placement there as well as special transportation/suitable transportation to and from the intended school. While an IEP was ultimately created recommending a specialized nonpublic school, the DOE never offered N▮▮ a school of any kind for that year. After the Parent filed a due process complaint, the DOE funded N▮▮'s program at Titus together with after-school ABA and Parent training.

10. No IEP meeting was done by the start of the 12-month 2022-2023 school year, and Parent once again filed a due process complaint seeking funding for N▮▮'s placement at Titus and home-based program.

11. On May 24, 2023, Impartial Hearing Officer Andrea Cohen issued a decision ordering the DOE to fund N▮▮'s program at Titus for the 2022-2023 school year, including extended school day services, 10 hours per week of after-school ABA therapy, and 4 monthly sessions of Parent counseling and training.

12. N▮▮'s most recent IEP meeting was held on July 20, 2022. The resultant IEP was both procedurally and substantively deficient. The CSE recommended a 12-month placement in a 12:1:1 community school program with a 1:1 paraprofessional; this is far less supportive than the nonpublic school recommended at the prior IEP meeting. The Parent is concerned the IEP recommendation was based on the perceived lack of an available non-public school placement rather than a change in N▮▮'s needs.

OATH SEHD CASE #287949

13. Accordingly, on June 20, 2023, the Parent informed the CSE of her intent, absent an appropriate nonpublic school placement, to re-enroll N▇ at the Titus School during the 12-month 2023-2024 school year, beginning in July, and seek funding at public expense for his placement there as well as special transportation. The Parent subsequently filed a Due Process Complaint. On July 9, 2024, in case # 268413, IHO Lauren Wagner Pederson found that the DOE failed to offer N▇ a FAPE and ordered the DOE to fund his program at Titus for the 2023-2024 school year.

14. Throughout the 2023-2024 school year, N▇ experienced multiple incidents where staff on his school bus could not manage his unsafe behaviors. These incidents included eloping from his seat, yelling, kicking and hitting the bus matron, threatening another student, and distracting the bus driver, which resulted in repeated removals from the bus. As a result, his physician determined that he required more supportive specialized transportation.

    a. The DOE did not meaningfully respond to N▇'s transportation difficulties, which impeded his ability to participate in school.

    b. The DOE failed to provide reasonable transportation accommodations pursuant to N▇'s physician. Not only did the DOE fail to hold an IEP reconvene, but the Parent was informed that DOE policy prevents the IEP team of even considering individualized special transportation requests; instead, such decisions are outsourced to the DOE's Office of School Health, which makes decisions independent of the IEP team.

15. N▇ initially made progress at Titus during the 2023-2024 school year. However, during the latter months of the year, his emotional dysregulation spiked. In particular, he had challenges with impulsivity, separation anxiety, and disability-related violence, including toward his mother in their home. N▇ was largely unable to fulfill basic activities of daily living and remains unable to function appropriately, safely or independently across multiple domains.

16. Citing N▇'s threatening behaviors, several of his home-based ABA providers determined his risky behaviors exceeded their abilities; accordingly, they dropped him as a client. The Parent was unable to locate new providers. So, though N▇'s needs escalated, he could not access supports that could have potentially allowed him to maintain a less restrictive environment.

17. N▇'s psychiatrist, Dr. Joshua Choi of Mt. Sinai, concluded that N▇'s symptoms worsened, and a day program is no longer adequate to facilitate his progress. To address the challenging behavior stemming from the complex interplay between his ASD-related deficits, ADHD, and anxiety, his psychiatrist determined that N▇ needs a residential school with expertise in students with high-functioning ASD.

    a. Dr. Choi also ruled out conduct disorder, which means N███'s interfering behaviors stemmed from his Autism, ADHD, and anxiety.

18. On May 22, 2024, N██h's mother reached out to the DOE to urgently request an IEP meeting. She noted that N███ has experienced an increase in maladaptive behaviors that are aggressive and self-injurious and that she believes he requires a residential placement.

19. On June 14, 2024, having heard nothing from the DOE, N███'s mother submitted a letter reiterating her request for an IEP meeting and advising that if an appropriate program and placement were not provided, she reserved the right to place N███ in an appropriate residential program and request funding through an impartial hearing.

20. Despite attending a 1:1 specialized day school and, for a time, receiving home-based therapy too, N███'s behavioral challenges increased. There were no more restrictive day school options to explore. His mother, providers and psychiatrist stressed he must urgently transition to a residential setting.

21. For over two years and three months, no IEP meeting has been held for N███. Further, the CSE did not offer N███ any program or brick and mortar placement for the 2024-2025 school year.

22. On June 18, 2024, the Parent filed a Due Process Complaint alleging N███ was denied a FAPE and/or subject to reckless indifference under Section 504 in the 2024-2025 school year. The Parent requested direct funding at Intermountain Residential Treatment Center for the 2024-2025 school year in addition to reimbursement for the cost of transporting N███ to and from Intermountain as well as family visits as recommended by the program.

    a. On August 29, 2024, in case # 275268, IHO Melanie Goldberg found the DOE failed to provide N███ a FAPE for the 2024-2025 school year. The IHO ordered the DOE to fully fund N███'s program at Intermountain and reimburse the Parent for her arrival, departure, and visit expenses. That order was not appealed.

23. **On July 22, 2024, N███ said he wanted to kill himself. The Parent immediately contacted his psychiatrist to schedule an evaluation at the hospital. Later that day, N███ attempted to drink bleach. The Parent subsequently took N███ to the hospital, where he was admitted and remained for several days before being discharged on August 1, 2024.**

24. N███ arrived at Intermountain on August 5, 2024, Unfortunately, N███ has demonstrated ongoing aggression toward staff and peers and has become so dysregulated that staff is unable to get him to remain seated long enough to

participate in school or therapy. This is at least partially attributable to Intermountain's failure to provide mandated counseling at the outset of his program.

25. On October 15, 2024, Intermountain notified the Parent that N▇ is to be discharged.

26. **Noah will be without a placement as of November 14, 2024. Due to N▇'s severe, dangerous, and self-injurious behaviors, he cannot safely return home; Dr. Choi confirmed he requires interrupted residential care.** At the same time, N▇'s behaviors have reached levels beyond the capacity of many therapeutic residential programs.

27. On October 18, 2024, the Parent informed the CSE of N▇'s pending discharge from Intermountain on November 14, 2024. The Parent reiterated her May 22, 2024 request for an IEP meeting to consider a residential deferral as soon as possible. The Parent stressed that, because N▇ cannot safely return home, he will experience irreparable harm without a prompt, appropriate placement. **To date, the CSE has not responded to the Parent's requests.**

   a. The Parent is concerned the DOE has adopted a practice/policy of ignoring IEP reconvene requests when a residential placement is being sought.

   b. **Undoubtedly, the DOE has acted with reckless indifference to N▇'s urgent needs.**

28. N▇ continues to require immediate placement in a residential school setting with expertise in supporting children with higher functioning ASD who have co-occurring mental illness. N▇ needs the 24-hour structure, onsite therapeutic and psychiatric services, and academic support of a therapeutic boarding school.

29. The Parent, through the Educational Consultant she hired at her own expense, has contacted 19 residential treatment programs in recent weeks to consider N▇'s candidacy. Almost all of the programs have rejected N▇ either due to a lack of available beds or because their program is unable to meet his needs.

30. On November 5, 2024, N▇ was accepted to Shrub Oak International School ("Shrub Oak"), a therapeutic residential program in Mohegan Lake, NY. Shrub Oak offers educational opportunities and programs to meet the needs of students across the autism spectrum, with a curriculum based on the most advances and successful evidence-based clinical and academic approaches in ASD education. Critically, Shrub Oak's staff has extensive experience treating students that present with a wide variety of major behavioral concerns.

31. N▇'s mother cannot afford to pay the tuition at Shrub Oak International School, and the school is not willing to admit N▇ without payment.

OATH SEHD CASE #287949

    a. Fortunately, they are currently holding N███'s potential placement while these proceedings are underway.

32. **Pendency Request:** Pursuant to the *stay-put provision* of the IDEA, 20 U.S.C.S §1415(i), 34 C.F.R. §300.518(a), and NYS Commissioner of Education Regulations, 8 N.Y.C.R.R. §200.5(m), the student must retain his current program/services during the pendency of an administrative or judicial proceeding regarding any due process complaint in connection with an appropriate placement for the 2024-2025 school year.

33. The parents seek pendency for N███'s enrollment at Intermountain pursuant to IHO Goldberg's August 29, 2024 Decision and Order (Case # 275268).

34. Shrub Oak is an appropriate pendency placement as, like Intermountain, it is a residential treatment center that serves students on the autism spectrum with behavioral challenges, and it is able to provide a substantially similar combination of academic programming, related services and behavioral supports to those advertised at Intermountain.

    a. de Paulino expressly exempted from its holding cases in which the last agreed upon setting is no longer available. de Paulino v NY City Dept. of Educ., 959 F3d 519, 534 n.65 (2d Cir 2020).

    b. Even if de Paulino were dispositive, the decision includes a condition precedent: "It is up to the school district," not the parent, "to decide how to provide that educational program [until the IEP dispute is resolved], *so long as the decision is made in good faith*." Id. at 534 (emphasis added). Here, the DOE has entirely absented itself from N███'s case.

    c. The parent expressly reserves the right to request a preliminary injunction to prevent irreparable harm.

35. The program selected by the parents provides instruction, supports, methodologies, supervision, and services that are specifically designed to meet N███'s unique special needs so that he can make meaningful educational progress.

36. The equities favor funding for N███'s tuition at Shrub Oak. The Parent in no way impeded the CSE's ability to provide a FAPE to N███.

*Proposed resolution of the problem to the extent known and available to the Parent:*

37. N███ requires placement in a residential school with expertise in students with high-functioning ASD.

38. Given the extent of N▇'s social and behavioral challenges, it is imperative that he is provided with 12-month program.

39. N▇ will regress academically, socially, and emotionally if placed in any less supportive setting.

40. N▇ requires transportation assistance to and from the chosen school together with his mother during the 2024-2025 school year as well as for any recommended Parent visits.

*Parent respectfully requests that the Impartial Hearing Officer find that she is entitled to the following:*

a. A finding that N▇ was denied a FAPE and/or subject to reckless indifference under Section 504 in the 2024-2025 school year;

b. Pendency at Shrub Oak International School;

c. Direct funding for N▇'s placement at Shrub Oak International School;

d. A finding that N▇ continues to require 12-month programming notwithstanding the present request for partial-year tuition;

e. Reimbursement for the cost of transporting N▇ to and from Shrub Oak International School, including but not limited to airfare, car rental, lodging, and meal costs for himself and his mother, for arrival, departure, and family visits as recommended by the program. Such costs shall be limited to $325/day, up to four days at a time, for meals and lodging, up to once per quarter;

f. Costs and fees. 20 USC § 1415(i)(3)(B)(C); and

g. The Parent is entitled to any additional relief such as the IHO determines is appropriate. 20 U.S.C. § 1415(i)(2)(C)(iii), § 1439(a)(1).

Please note that the Parent respectfully reserves the right to amend and/or modify this request.

*Please direct all questions and evidence packages to office@msiegelaw.com.*

Thank you in advance for your prompt attention to this matter.

Very Truly Yours,
Michelle Siegel, Esq.

Cc: A▇ A▇-B▇ (Parent)

OATH SEHD CASE #287949

**Javaris Jones**

| | |
|---|---|
| **From:** | Jared Stein <jaredstein@msiegelaw.com> |
| **Sent:** | Thursday, November 7, 2024 11:33 AM |
| **To:** | Impartial Hearing Office; speced@nysed.gov |
| **Cc:** | Makeba James; Michelle Siegel; Analise Altobelli; Peter Herold; Lesley Berson |
| **Subject:** | N█ B███ / ███ / DPC / Pendency |
| **Attachments:** | 241107_HR_NB███.pdf |

--
Sincerely,

Jared Stein
Partner
Law Office of Michelle Siegel
jaredstein@msiegelaw.com
Tel.: 347-480-9242 | Fax: 866-490-0183
Click here to securely share files with me

http://msiegelaw.com

NOTICE: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.