UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW
YORK - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                              )
                                              )
A.-A-B., individually and on behalf of        )
N.B., a minor,                                 )
                                              )
                    Plaintiff,                 )
                                              )  No. 24 Civ. _____
         -against-                             )
                                              )
NEW YORK CITY DEPARTMENT OF                    )
EDUCATION,                                     )
                                              )
                    Defendant.                 )
                                              )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
HER MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

Law Office of Michelle Siegel
*Attorney for Plaintiff A.A-B*

By:
Lesley Berson Mbaye, Esq.
*Of Counsel*
Law Office of Michelle Siegel
604 Hoagerburgh Rd.
Wallkill, NY 12589
Telephone: (347) 480-9246
lesleyberson@msiegelaw.com

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** --------------------------------------------------------------------- **1 -**

**STATEMENT OF FACTS** ------------------------------------------------------------------------ **2 -**

**ARGUMENT** ----------------------------------------------------------------------------------- **6 -**

**POINT I** ---------------------------------------------------------------------------------------- **6 -**

THIS COURT HAS SUBJECT MATTER JURISDICTION BECAUSE EXHAUSTION IS
EXCUSED --------------------------------------------------------------------------------------- 6 -

**POINT II** --------------------------------------------------------------------------------------- **7 -**

SHRUB OAK IS N.B.'S PENDENCY PLACEMENT PURSUANT TO BOTH THE IDEA'S
STATUTORY PROVISION AND ITS EQUITABLE MANDATE ----------------------------- 7 -

    *A.* Shrub Oak Is the Only Appropriate Pendency Placement for N.B. Under the IDEA's
      Stay-Put Provision 20 U.S.C. § 1415(j) --------------------------------------------------- 9 -

    B. This Court Can Also Order the DOE to Fund Shrub Oak Pursuant to the IDEA's
      Equitable Authority at 20 U.S.C. § 1415(i)(2)(C)(iii) ------------------------------- *11 -*

**POINT III** ------------------------------------------------------------------------------------ **13 -**

THE REQUIREMENTS FOR INJUNCTIVE RELIEF HAVE BEEN MET ------------------ - 13 -

    A. N.B. Will Suffer the Irreparable Harm of Having No Special Education Program Absent
      an Order that Defendant Fund his Enrollment at Shrub Oak ----------------------------- 13 -

    B. Plaintiff Has a Substantial Likelihood of Success on the Merits------------------------ 14 -

    C. The Balance of Hardships Favors Plaintiff, and the Public Interest Would Be Served by
      an Injunction --------------------------------------------------------------------------------- 15 -

**POINT IV** ------------------------------------------------------------------------------------- **16 -**

THE COURT SHOULD WAIVE THE REQUIREMENT THAT A BOND BE POSTED - - 16 -

**CONCLUSION** ------------------------------------------------------------------------------- **17 -**

## TABLE OF AUTHORITIES

<span style="text-align:center">C<small>ASES</small></span>

*A ex rel. D.A. v. N.Y. City Dept. of Educ.*,
  769 F Supp 3d 403 (SDNY 2011) ------------------------------------------------------------------17

*A.H. v. N.Y. City Dep't of Educ.*,
  No. 22 CV 9861(LGS) (S.D.N.Y. April 11, 2024) ---------------------------------------------13

*Bd. of Educ. of Cmty. High Sch. Dist. No. 218, Cook Cty., Ill. v. Illinois State Bd. of Educ.*,
  103 F.3d 545 (7th Cir. 1996) ------------------------------------------------------------------- 12, 13

*Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*,
  400 F.3d 508 (7th Cir. 2005) -------------------------------------------------------------------15

*Cosgrove v. Bd. of Educ.*,
  175 F. Supp. 2d 375 (N.D.N.Y. 2001) ------------------------------------------------- 16, 17, 19

*F.B. v. N.Y. City Dept. of Educ.*,
  132 F Supp 3d 522 (S.D.N.Y. 2015) ----------------------------------------------------------18

*F.L. v. Bd. of Educ.*,
  735 F. App'x 38 (2d Cir 2018) -----------------------------------------------------------------17

*Gabel ex rel. LG v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*,
  368 F. Supp. 2d 313 (S.D.N.Y. 2005)----------------------------------------------------------14

*Genesee Brewing Co. v. Stroh Brewing Co.*,
  124 F.3d 137 (2d Cir. 1997) -------------------------------------------------------------------16

*Henry v. School Admin. Unit 29*,
  70 F. Supp. 2d 52 (D.N.H. 1999) --------------------------------------------------------------13

*Killoran v. Westhampton Beach Sch. Dist.*,
  No. 20-CV-4121(JS)(SIL), 2022 U.S. Dist. LEXIS 52169 (E.D.N.Y. Mar. 22, 2022)---------11

*L.G. v. N.Y. City Dep't of Educ.*,
  No. 23 CV 9268 (JPO) (S.D.N.Y. August 26, 2024)-------------------------------------------13

*Laster v. Dist. of Columbia*,
  439 F. Supp. 2d 93 (D.D.C. 2006) ------------------------------------------------------- 12, 13

*Legal Recovery Assoc. LLC v. Brenes L. Group, P.C.*,
  No. 22-CV-1778 (ER) (BCM), 2024 U.S. Dist. LEXIS 25616 (S.D.N.Y. Feb. 13, 2024)-----18

*M.K. v. Roselle Park Bd. of Educ.*,
  2006 U.S. Dist. LEXIS 79726 (D. N.J. Oct. 31, 2006)-----------------------------------------14

*Mackey v. Board of Educ.,*
    386 F. 3d 158 (2d Cir. 2004) --------------------------------------------------------------10

*McKenzie v. Smith,*
    771 F.2d 1527 (D.C. Cir. 1985) ----------------------------------------------------------14

*Miss America Org. v. Mattel, Inc.,*
    945 F.2d 536 (2d Cir. 1991) --------------------------------------------------------------10

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.,*
    297 F.3d 195 (2d Cir. 2002) --------------------------------------------------------------- 9

*Open Soc'y Justice Initiative v. Trump,*
    20 CV 8021 (KPF), 2021 U.S. Dist. LEXIS 405 (S.D.N.Y. Jan. 4, 2021) -----------------------16

*Pharm. Soc'y of N.Y., Inc. v. N.Y. State Dep't of Soc. Servs.,*
    50 F.3d 1168 (2d Cir. 1995) --------------------------------------------------------------19

*T.C. v. N.Y. City Dep't of Educ.,*
    23 CV 1887 (ER)(GWG) (S.D.N.Y. August 21, 2023) ---------------------------------------13

*Ventura de Paulino v. N.Y.C. Dep't of Educ.,*
    959 F.3d 519 (2d Cir. 2020) ----------------------------------------------------- 10, 11, 15

*Wagner v. Board of Education of Montgomery County,*
    335 F.3d 297 (4th Cir. 2003) -------------------------------------------------------------15

*Y.S. v. N.Y. City Dept. of Educ.,*
    No. 1:21-cv-00711 (MKV), 2021 U.S. Dist. LEXIS 58361 (S.D.N.Y. Mar. 26, 2021) --------16

*Zvi D. v. Ambach,*
    694 F.2d 904 ((2d Cir. 1982) -------------------------------------------------------------12

S<small>TATUTES</small>

20 U.S.C. § 1415(i)(2)(C)(iii)------------------------------------------------------ passim

20 U.S.C. § 1415(j)-------------------------------------------------------------- passim

R<small>ULES</small>

Fed. R. Civ. Proc. 65(c)-----------------------------------------------------------19

## **PRELIMINARY STATEMENT**

N.B. is a 10-year old boy who is diagnosed with, *inter alia,* Autism Spectrum Disorder and who, by virtue of this disability, engages in aggressive behaviors that endanger himself and others around him. During 2024, his behaviors became unmanageable in his day school setting. On August 29, 2024, an Impartial Hearing Officer held that N.B. required an educational program in a therapeutic residential setting, and ordered the Defendant, New York City Department of Education ("DOE") to fund his enrollment at the Intermountain Residential Treatment Center for the 2024-2025 school year.

Unfortunately, Intermountain has determined that it, too, is unable to appropriately address N.B.'s needs and interfering behaviors. In mid-October 2024, the school informed Plaintiff that it would expel N.B. on November 20, 2024. Plaintiff alerted Defendant of this impending expulsion on October 18, 2024, and asked Defendant to immediately convene a meeting to identify an appropriate program and placement for her son. Defendant has failed to respond in any way.

Plaintiff unilaterally, with the help of a professional educational consultant, researched alternative placements for N.B., and secured his acceptance into Shrub Oak International School ("Shrub Oak"). Shrub Oak is a residential school that specializes in providing educational and therapeutic programs that meet the needs of students like N.B., who are diagnosed with autism and have serious disruptive behaviors. On November 7, 2024, Plaintiff filed an administrative due process complaint seeking funding for N.B. to attend Shrub Oak for the remainder of the 2024-2025 school year.

The stay-put or "pendency" provision of the Individuals with Disabilities Education Improvement Act ("IDEA") requires the Defendant DOE to provide N.B. an appropriate

educational program and placement to attend during the pendency of that underlying administrative due process proceeding and to do so in a way that is programmatically consistent with his previous residential placement. The Defendant has not offered N.B. any pendency placement at all.

Therefore, Plaintiff brings this motion for preliminary injunctive relief requiring the Defendant DOE to fund N.B.'s placement at Shrub Oak while his due process proceeding is pending. Plaintiff is entitled to this relief on two legal bases: first, his right to a pendent or "stay-put" placement pursuant to 20 U.S.C. § 1415(j); second, his right to a free appropriate public education under IDEA pursuant to this Court's equitable authority to enter an appropriate order pursuant to 20 U.S.C. § 1415(i)(2)(C)(iii). Without such relief, N.B. will suffer the irreparable harm of being denied a special education placement because he will be expelled from Intermountain and left without an alternative as of November 20, 2024.

The DOE should be ordered to pay the cost of N.B.'s tuition at Shrub Oak to ensure that his rights to pendency are vindicated and that he continues to receive the educational and therapeutic services he requires pending the underlying due process proceeding. As discussed below, N.B. meets the standard for injunctive relief as he has a strong likelihood for success on the merits, he will suffer irreparable harm without such relief, and the balancing of hardship and public interest both favor granting injunctive relief.

## STATEMENT OF FACTS

A.A-B. is the mother and legal guardian of N.B., a ten-year-old boy and student with a disability who is entitled to special education services from the DOE. Declaration of A.A-B, dated November 20, 2024 ("Pl. Decl.") ¶¶ 1, 2. 2.  N.B. has diagnoses of Autism Spectrum Disorder Level 1, Separation Anxiety Disorder, ADHD (Combined Type), and Specific

Learning Disorder with impairments in reading (Dyslexia) and mathematics. *Id.* ¶ 2. He has been classified as a student with Autism by the Defendant's Committee on Special Education ("CSE"). *Id.* 3. Due to his disabilities, N.B. has deficits related to academics, inattention, communication, and has impulsive behaviors that are often aggressive and can be dangerous to himself and others. *Id.* ¶ 3.

N.B. began presenting with aggressive behaviors when he was just two years old, and his preschool and kindergarten struggled to mitigate these behaviors using anything other than exclusion and expulsion. Pl. Decl. ¶¶ 4-5. In second grade (the 2021-2022 school year), N.B. began attending the Titus School ("Titus"), which provided a 1:1 Applied Behavior Analysis ("ABA") program. *Id.* ¶ 5. Titus provided N.B. with intensive structure, supports and consistency, which, for several years, was sufficient to maintain N.B.'s availability for classroom learning. *Id.* He attended Titus through June 2024. *Id.*

During 2024, N.B.'s behaviors have substantially worsened, and he has become regularly combative, non-compliant, aggressive, and violent both at home and at school. Pl. Decl. ¶ 6. When he is dysregulated at home, he has destroyed property and thrown things at and hit his mother. *Id.* On the school bus during the 2023-2024 school year, N.B. regularly threatened other students and bus staff, and put his hands on other students. *Id.* ¶ 8. On one occasion, N.B. put his hands on the bus driver, creating a danger to everyone aboard. *Id.* N.B.'s behaviors began to take on an inappropriate sexual overtone – in December 2023, N.B. and a classmate showed each other their genitalia during a bus ride, and few months later, N.B. told other students on the bus that they were sexy and that he wanted to see them naked, and he attempted to kiss another student. *Id.* ¶ 11.

The danger created by N.B.'s dysregulated and aggressive behaviors is compounded by

his lack of safety awareness. Over the past year, N.B. has run into the middle of the street, put his hand into a fire, and dangled his legs out the window of an apartment building. Pl. Decl. ¶ 10. On one occasion, N.B. purposely broke a glass picture frame and took a shard of broken glass to destroy his bedsheets. *Id.* N.B. requires constant one-to-one supervision to maintain his safety. *Id.*

In May 2024, N.B.'s psychiatrist, Dr. Joshua Choi, MD, determined that N.B. was at moderate risk of accidental harm to himself. Pl. Decl. ¶ 11. Dr. Choi found that N.B.'s challenging behavior stems from N.B.'s Autism-related social and communication deficits in combination with his ADHD and anxiety. *Id.* Finally, Dr. Choi concluded that the supports in place at Titus and at home were no longer sufficient to keep N.B. safe, and he advised that N.B. required placement at a residential school with expertise working with children with higher-functioning Autism Spectrum Disorder who have co-occurring mental health needs. *Id.*

On May 22, 2024, Plaintiff sent a letter to Defendant's Committee on Special Education ("CCSE") informing the Committee that, due to the increase in N.B.'s self-injurious and aggressive behaviors, his psychiatrist advised that he required placement in a Residential Treatment Center. Pl. Decl. ¶ 12. Plaintiff requested a meeting to develop an Individualized Education Program ("IEP") to recommend such a placement. *Id.* When the CSE failed to respond, Plaintiff sent a second letter on June 14, 2024, renewing her request for an IEP meeting and advising the CSE that, absent an appropriate public placement, she would secure a private placement and seek reimbursement. *Id.* ¶¶ 13-14. The CSE did not respond to this second letter, either. *Id.*

On August 5, 2024, N.B. enrolled at Intermountain, a Residential Treatment Center in Montana. Pl. Decl. ¶ 18. Plaintiff filed a due process complaint pursuant to the Individuals with

Disabilities Education Act ("IDEA") seeking funding for N.B.'s tuition there. *Id.* ¶¶ 16, 18. On August 29, 2024, an Impartial Hearing Officer issued a Findings of Fact and Decision holding that the DOE had denied N.B. a free appropriate public education for the 2023-2024 school year, that N.B. requires a residential placement, and that Intermountain was an appropriate such placement. *Id.* ¶¶ 19-20; Declaration of Lesley Mbaye, dated November 22, 2024 ("Mbaye Decl.") at Exh. 1 ("IHO Decision"). The hearing officer ordered the DOE to fund N.B.'s enrollment at Intermountain for the 2024-2025 school year. *Id.*

On October 15, 2024, Intermountain informed Plaintiff that it could no longer accommodate or appropriately manage N.B.'s needs and behaviors. Pl. Decl. ¶ 21. Intermountain informed Plaintiff that N.B. would be discharged from the program on November 20, 2024. *Id.* Plaintiff, through counsel, informed the CSE of this on October 18, 2024, but the CSE again failed to respond in any way. *Id.* ¶ 22. Plaintiff undertook another search for an appropriate residential program for N.B.; he was ultimately accepted by Shrub Oak International School ("Shrub Oak"), a therapeutic residential program in Mohegan Lake, NY that is tailored to meet the needs of students across the autism spectrum, including those with major behavioral concerns. *Id.* ¶¶ 24-25.

Shrub Oak has accepted N.B. into its Elementary Core Program, which serves students who, like N.B., have been diagnosed with ASD levels 1 or 2 - with academic, social and communication skills below grade level along with an inconsistent ability to self-regulate. *See* Declaration of Lauren Koffler, dated November 20, 2024 ("Koffler Decl.") ¶ 10. The school provides small classes of no more than eight students and full-time 1:1 support for students, like N.B., who require it. *Id.* ¶¶ 10, 22, 35. The school uses peer-reviewed methodologies in its teaching, curriculum development, and behavior management programs. *Id.* ¶¶ 13-18. Shrub

Oak determined it could meet N.B.'s behavioral, social, and academic needs after reviewing his full diagnostic and medical history, his treatment plan from Intermountain, and letters from Titus and Dr. Choi, N.B.'s psychiatrist. *Id.* ¶¶ 28-32. The Shrub Oak admissions team also conducted interviews with Dr. Choi, staff members from Titus and Intermountain, and N.B.'s mother. *Id.* ¶¶ 31-32. The admissions team unanimously determined that N.B.'s profile was similar to other students at Shrub Oak, and that his needs could be met within the Elementary Core Program. *Id.* ¶¶ 32-33.

On November 7, 2024, Plaintiff filed a due process complaint seeking, *inter alia*, a determination that Shrub Oak constitutes N.B.'s pendency or "stay-put" placement under 20 U.S.C. § 1415(j) because Intermountain will no longer be available. Pl. Decl. ¶¶ 23-25; Mbaye Decl. Exh. 2 ("Due Process Compl."). That case has been designated number 287949 by the New York City Office of Administrative Trials and Hearings ("OATH") Special Education Hearings Division. *Id.*

## ARGUMENT

### POINT I

### THIS COURT HAS SUBJECT MATTER JURISDICTION BECAUSE EXHAUSTION IS EXCUSED

The Second Circuit has long held that exhaustion of administrative remedies is not required for actions regarding IDEA's stay-put provision, 20 U.S.C. § 1415(j). *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199-200 (2d Cir. 2002). Then-Judge Sotomayor wrote that "access to immediate interim relief is essential for the vindication of this particular IDEA right." *Id.* at 200. The court held that "[t]he administrative process is 'inadequate' to remedy violations of § 1415(j) because, given the time-sensitive nature of the IDEA's stay-put provision, 'an immediate appeal is necessary to give realistic protection to the

claimed right'." *Id*. at 199 (quoting *Miss America Org. v. Mattel, Inc.*, 945 F.2d 536, 545 (2d Cir. 1991)). The Second Circuit has recognized that IDEA's stay-put provision triggers "the applicability of an automatic injunction designed to maintain the child's educational status quo while the parties' IEP dispute is being resolved." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 529 (2d Cir. 2020).

Plaintiffs here seek relief under the IDEA's pendency provisions and, as such, the IDEA's exhaustion requirements do not apply.

## POINT II

### SHRUB OAK IS N.B.'S PENDENCY PLACEMENT PURSUANT TO BOTH THE IDEA'S STATUTORY PROVISION AND ITS EQUITABLE MANDATE

The IDEA's pendency provision provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. §1415(j). Courts have interpreted the term "then-current educational placement" to "mean (1) typically the placement described in the child's most recently implemented IEP; (2) "the operative placement actually functioning at the time . . . when the stay put provision of the IDEA was invoked," and (3) "the placement at the time of] the previously implemented IEP." *Mackey v. Board of Educ.,* 386 F. 3d 158, 163 (2d Cir. 2004) (citations omitted). Once a pendency placement has been established, it can only be changed in one of four ways: (1) by an agreement of the parties; (2) by an unappealed administrative decision of a hearing officer; (3) by a decision of a state review officer ("SRO") that agrees with the child's parents that a change of placement is appropriate; or (4) by a court determination on an appeal from an SRO's decision. *Killoran v. Westhampton Beach*

*Sch. Dist.*, No. 20-CV-4121(JS)(SIL), 2022 U.S. Dist. LEXIS 52169, at *10 (E.D.N.Y. Mar. 22, 2022).

Ordinarily, N.B.'s "then-current educational placement" would be established by the unappealed Findings of Fact and Decision of IHO Michelle Goldberg in case 275268, dated August 29, 2024, finding that Intermountain was an appropriate program for N.B. *See, Killoran, supra* (an unappealed administrative decision establishes a student's pendency placement). However, Intermountain notified Plaintiff on October 15, 2024, that it could no longer meet N.B.'s needs and that it would be expelling him effective November 20, 2024. Pl. Decl. ¶ 21. On October 18, 2024, Plaintiff notified Defendant's CSE and requested an immediate meeting to identify another residential placement for N.B. *Id.* ¶ 22. For nearly a full month, Defendant has failed to respond to Plaintiff's request. *Id.* Without a public placement – as is N.B.'s right under the IDEA – Plaintiff unilaterally secured N.B.'s acceptance at Shrub Oak and, on November 7, 2024, filed a due process complaint seeking funding for that placement. *Id.* ¶ 23; Mbaye Decl., Exh. 2.

This case presents precisely the unanswered question posed by the Second Circuit in *Ventura de Paulino*: What is a student's pendency placement when the "last agreed-upon school" is no longer available, *and* the school district has refused or failed to provide pendency services to the student? *Ventura de Paulino,* 959 F.3d at 534, n.65. There can be no dispute that Intermountain, N.B.'s last agreed-upon placement, is no longer available to N.B. because the school has stated its intention to expel him. Pl. Decl. ¶ 21. It is equally uncontroverted that the Defendant has either "refuse[d] or fail[ed] to provide pendency services to the student" by failing to respond to Plaintiff's request for an IEP meeting or otherwise offer any school to N.B. *Id.* ¶ 22.

In such a situation, N.B. must not be left without a remedy. The Second Circuit has made

clear that, when the last-agreed upon placement is not available for a student through no fault of his parents, the student may have a claim under § 1415(j) or, if not, a court could grant injunctive relief to modify a student's placement pursuant to the court's equitable authority provided by 20 U.S.C. § 1415(i)(2)(C)(iii). Here, N.B. lost his placement at Intermountain due to his disability, and the Defendant has not provided an alternate placement that can meet N.B.'s needs, N.B. is entitled to an order directing Defendant fund his placement at Shrub Oak pending the underlying due process proceeding.

### A. Shrub Oak Is the Only Appropriate Pendency Placement for N.B. Under the IDEA's Stay-Put Provision 20 U.S.C. § 1415(j)

The IDEA's "stay put" or pendency requirement is a unique statutory protection was created by Congress to protect students with disabilities, operating as an automatic injunction to maintain a student in the "then-current educational placement." 20 U.S.C. § 1415(j). The Second Circuit has explained, "implicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing." *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982) (footnote omitted). Thus, "cut[ting] off public funds would amount to a unilateral change in placement, prohibited by the Act." *Id.* A school district's failure to offer *any* pendency placement is a violation of the stay-put clause, which results in the district's forfeiture of its right to select the student's pendency placement. *See Bd. of Educ. of Cmty. High Sch. Dist. No. 218, Cook Cty., Ill. v. Illinois State Bd. of Educ.*, 103 F.3d 545, 549-50 (7th Cir. 1996) (affirming court's authority to identify pendency placement for expelled student where school district failed to offer alternative); *Laster v. Dist. of Columbia*, 439 F. Supp. 2d 93, 101-02 & n.10 (D.D.C. 2006) (upholding parents' right to unilaterally select school placement where school district failed to do so after prior school became unavailable).

Here, N.B.'s pendency placement is established by the unappealed Findings of Fact and Decision of IHO Michelle Goldberg, which held that N.B. requires a therapeutic residential placement to meet his disability-related needs and that Intermountain was such a place. Mbaye Decl., Exh. 1. As soon as Intermountain informed Plaintiff it could no longer meet N.B.'s needs, Plaintiff informed the Defendant and asked the DOE to identify an alternative public and appropriate residential placement for her son. Pl. Decl. ¶ 22. The Defendant has failed to take any action at all to ensure that N.B.'s education is not interrupted and that he is maintained in an appropriate placement. *Id.*

The DOE has, thus, failed in its legal obligation to maintain N.B. in an appropriate placement pending the Plaintiff's due process proceeding. This opens the door for Plaintiff to unilaterally select such a placement at Defendant's expense. *See High Sch. Dist. No. 218,* 103 F.3d at 551; *Laster*, 439 F. Supp. 2d at n.10. Although the Second Circuit has not addressed the question of a stay-put placement when the pendency placement is not available and the district has refused or failed to provide a pendency placement, at least three judges in this District, when faced with this question, awarded injunctive funding to maintain the child in their unilaterally chosen placement. *See A.H. v. N.Y. City Dep't of Educ.,* No. 22 CV 9861(LGS) (S.D.N.Y. April 11, 2024); *L.G. v. N.Y. City Dep't of Educ.,* No. 23 CV 9268 (JPO) (S.D.N.Y. August 26, 2024); *T.C. v. N.Y. City Dep't of Educ.*, 23 CV 1887 (ER)(GWG) (S.D.N.Y. August 21, 2023). This approach is consistent with other Circuits that have held that a school district "must fulfill its stay-put obligation by placement a disabled student in a comparable facility." *See Henry v. School Admin. Unit 29*, 70 F. Supp. 2d 52, 61 (D.N.H. 1999). In *Henry*, as in this case, the original stay-put placement was no longer available; the court, therefore, found that the district was responsible for funding a school that provided "an

experience substantially similar" to the prior placement pending the resolution of the due process case. *Id.; see also, McKenzie v. Smith*, 771 F.2d 1527, 1533 (D.C. Cir. 1985) ("Because his current placement . . . was no longer available, DCPS was obligated to locate and arrange a placement in a similar program"); *M.K. v. Roselle Park Bd. of Educ.*, 2006 U.S. Dist. LEXIS 79726, at *34-36, (D. N.J. Oct. 31, 2006) (student whose prior placement had become unavailable due to aging out was still entitled to comparable public placement),

Without funding provided by DOE for Shrub Oak, N.B. will have no educational placement at all. As this Court has recognized, the lack of any pendent placement at all is "an impossible result." *Gabel ex rel. LG v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 325 (S.D.N.Y. 2005). In *Gabel*, the school district had acknowledged that the last-agreed upon IEP was not appropriate, and it was therefore not recommending continuation of that last-agreed upon IEP. The court stated, "there has to be some pendency," and found that "there was no other possible pendency," except the placement selected by the parent. *Id*. at 325-26.

Therefore, this Court should grant Plaintiffs' motion for a temporary restraining order and a preliminary injunction and order DOE to pay the tuition for Shrub Oak during the pendency of the due process hearing.

**B.  This Court Can Also Order the DOE to Fund Shrub Oak Pursuant to the IDEA's Equitable Authority at 20 U.S.C. § 1415(i)(2)(C)(iii)**

If this Court concludes that § 1415(j) is inapplicable to the facts in this case, then this Court should, in the alternative, order the DOE to fund N.B.'s placement at Shrub Oak  pursuant to its equitable authority under 20 U.S.C. § 1415(i)(2)(C)(iii), which states that the court "shall grant such relief as the court determines is appropriate." The Second Circuit held that a parent could seek injunctive relief to modify a student's placement pursuant to this statutory equitable authority

under "certain extraordinary circumstances." *Ventura de Paulino*, 959 F.3d at 534, n.65. This case involves such an extraordinary circumstance – N.B. has been awarded funding for a residential placement but, due to his disabilities, he will soon lose that placement. The Defendant has failed to provide any—much less any appropriate – pendent placement for N.B. since learning of his impending expulsion on October 18, 2024.

Although the *Ventura de Paulino* decision stated that it is "up to the school district" to decide how educational programming will be provided during the pendency of an IEP dispute, the Court imposed a significant condition on the exercise of this authority: namely that this decision "*is made in good faith*." *Id*. at 534 (emphasis added). Good faith is absent here. N.B.'s pendency placement is unavailable to him through no fault of his own or his mother's, but solely due to N.B.'s disabilities. The school district has offered nothing at all for him.

The Second Circuit noted that "at least one of our sister Circuits has acknowledged that, under certain extraordinary circumstances . . . a parent may seek injunctive relief to modify a student's placement pursuant to the equitable authority provided in 20 U.S.C. § 1415(i)(2)(C)(iii)[1]," *Ventura de Paulino,* 959 F3d at 534, n65 (citing *Wagner v. Board of Education of Montgomery County*, 335 F.3d 297, 302-03 (4th Cir. 2003)) (permitting parents to seek relief under IDEA's equitable provisions instead of the statute's stay-put provision itself). Violations of the stay-put provision – such as the DOE's failure to agree to or provide any pendency placement for S.K. – permit a district court to exercise *equitable discretion* with respect to the duration of the stay." *Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005) (emphasis supplied).

---

[1] Because of subsequent amendments to IDEA that added a new provision at 20 U.S.C. § 1415(i)(2)(B), that provision is now found at 20 U.S.C.§ 1415(i)(2)(C)(iii).

## POINT III

### THE REQUIREMENTS FOR INJUNCTIVE RELIEF HAVE BEEN MET

To obtain a preliminary injunction, "a party must demonstrate: 1) that it is subject to irreparable harm; and 2) either a) that it will likely succeed on the merits or b) that there are sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and that a balancing of the hardships tips 'decidedly in favor of the moving party'." *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997). Further the injunction must be in the public interest, and, when the government is the defendant, the balance of the hardships and the public interest merge. *See Open Soc'y Justice Initiative v. Trump*, 20 CV 8021 (KPF), 2021 U.S. Dist. LEXIS 405, at *17 (S.D.N.Y. Jan. 4, 2021). As set forth below, all elements are met here.

### A. N.B. Will Suffer the Irreparable Harm of Having No Special Education Program Absent an Order that Defendant Fund his Enrollment at Shrub Oak

The loss of an educational placement is an irreparable harm. Indeed, "It is almost beyond dispute that wrongful discontinuation of a special education program to which a student is entitled subjects that student to irreparable harm." *Cosgrove v. Bd. of Educ.*, 175 F. Supp. 2d 375, 392 (N.D.N.Y. 2001); *see also Y.S. v. N.Y. City Dept. of Educ.*, No. 1:21-cv-00711 (MKV), 2021 U.S. Dist. LEXIS 58361, at *9 (S.D.N.Y. Mar. 26, 2021) (relying on *Cosgrove*). The *Cosgrove* court recognized that the interruption of a disabled child's education can cause setbacks that cannot be remedied by a future compensatory award. *Id.* at 393 (describing such an award as no more than a "pyrrhic victory").

Here, N.B. will be expelled from Intermountain, his current educational placement, on November 20. Pl. Decl. ¶ 21. Absent an order that Defendant fund Shrub Oak, N.B. will be left

without a pendency placement – indeed, without any educational program or placement at all, precisely the wrongful discontinuation the *Cosgrove* court held would constitute irreparable harm. *Cosgrove, supra.* It is clear from the persistence of N.B.'s aggressive, unsafe, and interfering behaviors that he continues to require a therapeutic, residential placement as determined by the Impartial Hearing Officer in August 2024. Mbaye Decl., Exh. 1. The Defendant has been on notice of this since October 18, 2024, but has failed to identify another appropriate, residential placement for N.B. Pl. Decl. ¶¶ 22-23.  Thus, Shrub Oak, the placement identified by Plaintiff, is N.B.'s sole option. Without injunctive relief requiring Defendant to fund his enrollment there, N.B. will suffer irreparable harm.

### B.    Plaintiff Has a Substantial Likelihood of Success on the Merits

When analyzing whether to issue preliminary injunction pursuant to an IDEA claim, the court must determine the likelihood of success on the underlying administrative claim. *Cosgrove*, 175 F. Supp. 2d at 396. The Plaintiff meets that burden.

In tuition reimbursement or direct payment IDEA actions such as the Plaintiff's, claims are assessed using the three-step *Burlington/Carter* test: parents are entitled to reimbursement if (1) the school district's proposed placement violated the IDEA, (2) the parent's alternative private placement is appropriate to meet the child's needs, and (3) equitable considerations favor reimbursement. *F.L. v. Bd. of Educ.*, 735 F. App'x 38, 39 (2d Cir 2018); *A ex rel. D.A. v. N.Y. City Dept. of Educ.*, 769 F Supp 2d 403, 429 (SDNY 2011).

Here, an Impartial Hearing Officer has already determined that the Defendant failed to provide N.B. a FAPE for the 2024-2025 school year. Mbaye Decl., Exh. 1 at 4-5.  As to Prong II, the affidavit of Lauren Koffler, Head of Admissions, Communications and Client Relations at Shrub Oak, demonstrates that Shrub Oak can provide N.B. with the 1:1 therapeutic and

academic support he needs. *See* Koffler Decl. ¶¶ 22, 31, 35 (Shrub Oak's ability to provide N.B. with full-time, 1:1 support to address his behaviors); *id.* ¶ 20 (Shrub Oak employs Universal Design for Learning framework which is highly effective in engaging students with behavioral and learning challenges); *id.* ¶¶ 13-16 (describing several evidence-based methodologies that are used). Shrub Oak specializes in helping students who, like N.B., have been diagnosed with Autism and have co-occurring behavioral challenges. *Id.* ¶ 4. Consequently, the Plaintiff has a substantial likelihood of success as to the merits of Prong II of the *Burlington-Carter* test.

Equitable considerations favor reimbursement where the parent has cooperated with the IEP process and has maintained an open mind to a public placement. *F.B. v. N.Y. City Dept. of Educ.*, 132 F Supp 3d 522, 556 (S.D.N.Y. 2015). Here, the Plaintiff asked Defendant on multiple occasions to identify an appropriate program and placement for N.B., and only sought a private placement when the DOE failed to respond. Pl. Decl. ¶¶ 22-24. Indeed, it is the Defendant who has exhibited bad faith in this matter by ignoring Plaintiff's request that the DOE fulfill its legal duty to provide her son with an appropriate pendency placement. *Id.* Such bad faith precludes Defendant from any mitigation of the relief owed to Plaintiff. *See Legal Recovery Assoc. LLC v. Brenes L. Group, P.C.*, No. 22-CV-1778 (ER) (BCM), 2024 U.S. Dist. LEXIS 25616, at *9 (S.D.N.Y. Feb. 13, 2024) (the doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief"). Under these circumstances, the equities most clearly favor reimbursement.

All three prongs of the Burlington-Carter test would likely be resolved in Plaintiff's favor and, therefore, she has demonstrated a substantial likelihood of success on the merits.

### C.  The Balance of Hardships Favors Plaintiff, and the Public Interest Would Be Served by an Injunction

Here, the balance of hardships is between N.B. not receiving any educational or

therapeutic services from DOE during the pendency of his due process proceeding and the DOE "being forced to pay for the education now" pending this case and the administrative hearings, without the ability to recover costs if it is successful. *See Cosgrove*, 175 F. Supp. 2d at 395.

This Court should find that the balance of hardships tips in favor of the Plaintiff and that the public interest would be served by granting the injunctive relief Plaintiff seeks.

**POINT IV**

**THE COURT SHOULD WAIVE THE REQUIREMENT THAT A BOND BE POSTED**

The requirement under Rule 65(c) of the Federal Rules of Civil Procedure that a bond be posted should be waived given the public interest advanced in this case. *See Pharm. Soc'y of N.Y., Inc. v. N.Y. State Dep't of Soc. Servs.*, 50 F.3d 1168, 1174-75 (2d Cir. 1995) (waiver of bond affirmed where action was to enforce public interest "rising out of a comprehensive health and statute"). This case involves an important public policy interest, the compliance of a school district with IDEA's mandates of. Given this important public interest, it is appropriate for this Court to waive the requirement that a bond be posted. *See Cosgrove*, 175 F. Supp. 2d at 400 (waiving bond requirement for a student with a disability).

## CONCLUSION

For the reasons stated above, Plaintiff's' motion for a temporary restraining order and a preliminary injunction requiring DOE to fund N.B.'s placement at Shrub Oak during the pendency of his underlying due process proceeding should be granted.

Dated:   November 22, 2024

Respectfully submitted,

Law Office of Michelle Siegel, PLLC
*Attorney for Plaintiffs*

By: /s/ Lesley Berson Mbaye
    Lesley Berson Mbaye, Esq.
    Of Counsel
    604 Hoagerburgh Rd.
    Wallkill, NY 12589
    T: (347) 480-9246
    E: lesleyberson@msiegelaw.com