Index No. 24-cv-8996 (LGS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

A.A-B, individually and on behalf of N.B., a minor,

Plaintiff,

-against-

THE NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

**MURIEL GOODE-TRUFANT**
Acting Corporation Counsel of the City of New York
Attorney for Defendant
100 Church Street
New York, New York, 10007

*Of Counsel: Jordan Doll*
*Tel: (212) 356-2624*
*Matter #:  2024-100168*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................. ii

PRELIMINARY STATEMENT............................. ..............................................1

STATUTORY FRAMEWORK AND STATEMENT OF FACTS ....................................................1

    I.   STATUTORY FRAMEWORK IN BRIEF   .......................................................1

    II.  THE INSTANT CASE................................................................................3

ARGUMENT ..............................................................................................6

    I.   PLAINTIFF FAILS TO MEET THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION .......................................................6

         A.  Plaintiff is Not Entitled to Relief under a Theory of Pendency ...............................................................7

         B.  The Court should not award relief pursuant to its equitable powers ..........................................................12

         C.  Plaintiff has failed to show imminent harm or that granting the emergency relief is in the Public Interest ..............................................................14

    II.  ANY AWARDED PAYMENT SHOULD BE SUBJECT TO REASONABLE CONDITIONS ...........................................................16

CONCLUSION...........................................................................................18

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Bd. of Educ. v. Rowley,*
    458 U.S. 176 (1982)..........................................................................................1

*Coleman v. Newburgh Enlarged City Sch. Dist.,*
    503 F.3d 198 (2d Cir. 2007)..........................................................................15

*Davis v. District of Columbia,*
    80 F.4th 321 (D.C. Cir. 2023)..................................................................10, 11

*Davis v. District of Columbia,*
    No. 21-02884 (RJL), 2021 U.S. Dist. LEXIS 267158
    2021 WL 11680748, (D.C. Nov. 19, 2021) .................................................11

*Fallis v. Ambach,*
    710 F.2d 49 (2d Cir. 1983)..............................................................................9

*Forest Grove Sch. Dist. v. T.A.,*
    557 U.S. 230 (2009)..........................................................................................1

*Gagliardo v. Arlington Cent. Sch. Dist.,*
    489 F.3d 105 (2d Cir. 2007)............................................................................2

*Grullon v. Banks,*
    No. 23-CV-5797, 2023 U.S. Dist. LEXIS 188079
    (S.D.N.Y. Oct. 19, 2023) ...............................................................................10

*M.H. v. N.Y.C. Dep't of Educ.,*
    685 F.3d 217 (2d Cir. 2012)..........................................................................13

*Mendez v. Banks,*
    65 F.4th 56 (2d Cir. 2023) ........................................................................6, 16

*No Spray Coalition, Inc. v. City of N.Y.,*
    252 F.3d 148 (2d Cir. 2001)............................................................................6

*R.E. v. N.Y.C. Dep't of Educ.,*
    694 F.3d 167 (2d Cir. 2012)............................................................................2

*S.B. v. N.Y.C. Dep't of Educ.,*
    No. 21-cv-9356, 2022 WL 220085
    (S.D.N.Y. Jan. 25, 2022)..........................................................................10, 14

*Sch. Comm. of Burlington v. Dep't of Educ.,*
    471 U.S. 374 (1985)..........................................................................................7

**Cases**                                                                                          **Pages**

*T.M. v. Cornwall Cent. Sch. Dist.*,
   752 F.3d 145 (2d Cir. 2014)..................................................................................7

*T.Y. v. N.Y.C. Dep't of Educ.*,
   584 F.3d 412 (2d Cir. 2009).................................................................................8

*Tucker Anthony Realty Corp. v. Schlesinger*,
   888 F.2d 969 (2d Cir. 1989)...............................................................................14

*Uppal v. N.Y.S. Dep't of Health*,
   756 F. App'x 95 (2d Cir. 2019) ..........................................................................14

*Ventura de Paulino v. New York City Dep't of Educ.*,
   959 F.3d 519 (2d Cir. 2020)..........................................3, 7, 8, 9, 10, 12, 15

*Wagner v. Bd. of Educ.*,
   335 F.3d 297 (4th Cir. 2003) ...................................................................11, 12, 13

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982)........................................................................................6, 15

**Statutes**

8 N.Y.C.R.R. § 200.5(j)......................................................................................15

8 N.Y.C.R.R. § 201.2(f).......................................................................................15

8 N.Y.C.R.R. § 201.11.........................................................................................15

20 U.S.C. § 1400(d)(1)(A).....................................................................................1

20 U.S.C. §§ 1400, *et seq*......................................................................................1

20 U.S.C. § 1401....................................................................................................1

20 U.S.C. § 1415(i)(1)(B)......................................................................................2

20 U.S.C. § 1415(i)(2)(A)......................................................................................2

20 U.S.C. § 1415(i)(2)(B)(iii)...............................................................................13

20 U.S.C. § 1415(i)(2)(C)(iii)..........................................................1, 6, 12, 13, 14

20 U.S.C. § 1415(b)(6)..........................................................................................2

20 U.S.C. § 1415(f)(1)(A)......................................................................................2

**<u>Statutes</u>**                                                                                              **<u>Pages</u>**

20 U.S.C. § 1415(g)(1) ..................................................................................................2

20 U.S.C. § 1415(j) ................................................................................2, 6, 7, 11, 12, 13

N.Y. Educ. Law § 4402(1)(b)(1) ..................................................................................2

N.Y. Educ. Law § 4404(1)(a) ........................................................................................2

N.Y. Educ. Law § 4404(2) .............................................................................................2

N.Y. Educ. Law § 4404(3)(a) ........................................................................................2

## PRELIMINARY STATEMENT

Defendant the New York City Department of Education ("DOE" or "Defendant") submits this Memorandum of Law in Opposition to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction. Plaintiff seeks immediate funding for their child's private placement at Shrub Oak pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*. This extraordinary remedy is not warranted.

Shrub Oak is not the last agreed upon placement and, so, does not trigger the "stay-put" clause under the IDEA. Accordingly, the student is not entitled to tuition pursuant to pendency. Further, the Court should not use its equitable powers to grant immediate tuition funding under 20 U.S.C. § 1415(i)(2)(C)(iii). The DOE has offered the student an interim placement and is working to develop a new Individualized Education Program ("IEP"). Considering the DOE's ongoing efforts and an imminent administrative hearing to consider Plaintiff's request through an administrative process better equipped and statutorily assigned to rule on the appropriateness of Shrub Oak as a placement, the Court should not order immediate public funding for a unilateral placement that has not been adjudicated on the merits.

## STATUTORY FRAMEWORK AND STATEMENT OF FACTS

### I. Statutory Framework in Brief

Congress enacted the IDEA to promote the education of students with disabilities. *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 238-39 (2009). The IDEA provides that a child with a disability must receive a free appropriate public education ("FAPE"), which includes special education and related services provided at public expense. 20 U.S.C. § 1400(d)(1)(A). These services must meet the standards of the State educational agency and be provided in conformity with an individualized education program ("IEP") for each such student. 20 U.S.C. § 1401; *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982). In New York, the State has assigned responsibility for

developing IEPs to local Committees on Special Education ("CSE"), comprised of members appointed by the local school district's board of education. *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012) (citing N.Y. Educ. Law § 4402(1)(b)(1)). The CSE must examine the student's level of achievement and specific needs and determine an appropriate IEP for the school year. *R.E.*, 694 F.3d at 175 (citing *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 107-08 (2d Cir. 2007).

The IDEA sets forth procedures for a parent to present a complaint regarding the educational placement of a student, including a complaint regarding the student's IEP. *See* 20 U.S.C. § 1415(b)(6). Parents or guardians must file a due process complaint ("DPC") outlining their grounds for challenging the IEP before they are entitled to a hearing before an IHO. *See* 20 U.S.C. § 1415(f)(1)(A); N.Y. Educ. Law § 4404(1)(a). In New York State, the IHO's decision may be appealed by either party to the State Education Department's Office of State Review within 40 days of the decision's release where the State Review Officer ("SRO") will independently review the findings and decision rendered by the IHO. 20 U.S.C. § 1415(g)(1); N.Y. Educ. Law § 4404(2). The SRO is empowered to modify "any determination of the impartial hearing officer" relating to the selection of an appropriate special education program or service. N.Y. Educ. Law § 4404(2). Although the SRO's decision is considered final, a party aggrieved by that administrative decision may bring an action for relief in state or federal district court. 20 U.S.C. §§ 1415(i)(1)(B), (2)(A); N.Y. Educ. Law § 4404(3)(a).

The IDEA includes a "pendency" or "stay-put" provision that provides that, while the administrative and judicial proceedings are pending and "unless the school district and the parents agree otherwise," a child must remain, at public expense, "in his or her then-current educational placement." 20 U.S.C. § 1415(j).

The term "then-current educational placement" in the stay-put provision typically refers to the child's last agreed-upon educational program before the parent requested a due process hearing to challenge the child's IEP. Under the IDEA, an initial placement is made by the school district upon the consent of the parent. A child's educational placement (or program) may be changed if, for example, the school district and the parents agree on what the new placement should be. The placement can also be changed if an impartial hearing officer or state review officer finds the parents' new placement to be appropriate by adjudicating the IEP dispute in the parents' favor, and the school district chooses not to appeal the decision. **Accordingly, implicit in the concept of "educational placement" in the stay-put provision (i.e., a pendency placement) is the idea that the parents and the school district must agree either expressly or as impliedly by law to a child's educational program.**

*Ventura De Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 532 (2d Cir. 2020) (emphasis added).

## II.    The Instant Case

Plaintiff seeks immediate funding for the student's placement at the Residential Program Shrub Oak. Plaintiff's child, N.B. (the "student"), is a ten-year-old student with an IDEA disability classification of Autism and, as a result, is entitled to special educational services under the IDEA. Complaint, ECF No. 10 ("Compl.") ¶¶ 4, 5. Beginning the 2021-22 school year, Plaintiff placed the student at the Titus School, a structured private day school. Plaintiff's Motion in Support of Emergency Relief ("Pl. Mo."), ECF No. 8, at 3. Defendant funded the student's placement at the Titus School for the 2021-22, 2022-23, and 2023-24 SYs. *Id.* ¶ 6; Declaration of Christian Kinsella ("Kinsella Decl.") dated December 6, 2024 ¶ 7.

Prior to the 2024-25 SY, Plaintiff unilaterally changed the student's placement, and enrolled him in a residential program, the Intermountain Residential Treatment Center ("Intermountain"), starting in summer 2024-25 SY. Compl. ¶¶ 49, 51; Kinsella Decl. ¶ 7. Plaintiff filed a Due Process Complaint on June 18, 2024 seeking tuition and transportation costs for this placement. Compl. ¶ 51; Findings of Fact and Decision 275268 ("FOFD"), Plaintiff's Exhibit 1, ECF No. 7-1, at 1;

Kinsella Decl. ¶ 2. On August 29, 2024, IHO Melanie Goldberg found that the DOE had not provided the student a FAPE for the 2024-25 SY, that Intermountain was an appropriate placement, and that the equities favored full tuition through direct payment and reimbursement at Intermountain as well as transportation costs to and from this placement. FOFD, at 5-14. Neither the DOE or Plaintiff appealed this FOFD. Compl. ¶ 52. Accordingly, Intermountain became the student's last agreed upon placement by operation of law. *Id.*

DOE staff from the student's assigned CSE reached out to the Parent on or around September 17, 2024, October 15, 2024, and November 26, 2024 seeking an update on the student's records, including updates to the student's Home Address, Telephone, School Name, and School Address. Kinsella Decl. ¶ 8.

On October 15, 2024, Intermountain alerted Plaintiff that they could not adequately address the student's disabilities; the student expressed harmful behavior, which allegedly included threats and physical aggression. *Id.* ¶¶ 53. 54. As a result, the school notified the parent on October 15, 2024 that they would expel the student as of November 14, 2024. *Id.* ¶¶ 54, 63. Plaintiff alleges they informed the DOE staff of the end of the student's placement at Intermountain on October 18, 2024; the assigned CSE 10, however, does not have a record of these communication and upon information and belief, only became aware of the pending discharge through this federal filing. Kinsella Decl. ¶ 9.[1]

After a search of multiple residential placements, Plaintiff identified Shrub Oak, a residential program that would accept the student for the remainder of the semester. Compl. ¶ 58.

---

[1] A change in the student's assigned CSE may have caused any alleged delay in communication between the DOE and Plaintiff. When the student's placement changed from Titus School to Intermountain, an out-of-state residential facility, his CSE was reassigned from CSE 9 to CSE 10. Kinsella Decl. ¶ 7.

However, Shrub Oak conditioned the student's enrollment on a guarantee of tuition payment. *Id.* ¶ 59. Plaintiff allege they cannot pay the full cost of tuition out of pocket. *Id.* Plaintiff was able to put down a deposit and the student has been enrolled at Shrub Oak until at least December 16, 2024. ECF No. 19. Plaintiff filed a Due Process Complaint on November 7, 2024, alerting Defendant of the time-sensitive circumstances and requesting Defendant fund Shrub Oak tuition as well as transportation cost under either a theory of pendency or under a theory that the DOE has not acted in good faith and, so, must fund these costs. Compl. ¶ 60; *see generally* Plaintiff's Exhibit 2, ECF No. 7-2 ("DPC"). An initial hearing on this DPC is scheduled for December 18, 2024. Kinsella Decl. ¶ 13. To Defendant's knowledge, Plaintiff's counsel has not asked the IHO for an expedited or emergency hearing on the DPC, or a pendency determination. Kinsella Decl. ¶ 11.

Following this federal filing, CSE 10 has reached out to Plaintiff to schedule a CSE meeting to reevaluate the student and update his IEP, which will lead to another placement offer. Kinsella Decl. ¶ 9. A notice (via e-mail) went out to Plaintiff on December 5, 2024 scheduling both a Social History Update (with the parent) and a Psychoeducational Evaluation (with the student) for December 17, 2024. *Id.* In response, the Parent requested testing at Shrub Oak and indicated that the student is currently in the residential program at Shrub Oak. *Id.*

The DOE Office of Student Enrollment has confirmed an available seat for the student, as an interim placement, until a new IEP is developed, based on the Student's previous IEP. The interim placement is 03M165 Public School 165, in District 3, Manhattan—the Robert E. Simon School—at 234 W 109 St, New York, NY 10025. *Id.* ¶ 10. CSE 10 provided the Parent with this offer of placement via e-mail on December 6, 2024. *Id.* Upon reconvening of an IEP meeting, the IEP team will be able to consider the Student's needs and whether a residential educational placement is appropriate. *Id.*

Plaintiff brought this action in federal court on November 26, 2024 seeking a preliminary injunction and emergency relief. ECF No. 1-14. Specifically, Plaintiff seeks immediate public funding for Shrub Oak for the 2024-25 SY pending the decision of the November 7, 2024 DPC.

## ARGUMENT

### I.    Plaintiff Fails to Meet the Requirements for a Preliminary Injunction.

A preliminary injunction is an extraordinary remedy never granted as a right. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). To obtain a preliminary injunction,

> [P]laintiffs must show a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiffs' favor, (2) that they are likely to suffer irreparable injury in the absence of an injunction, (3) that the balance of hardships tips in their favor, and (4) that the public interest would not be disserved by the issuance of a preliminary injunction.

*Mendez v. Banks*, 65 F.4th 56, 63-64 (2d Cir. 2023) (internal quotations and alterations omitted).

Plaintiff has failed to demonstrate their entitlement to a preliminary injunction. Plaintiff cannot show a likelihood of success on the merits. "[When,] as here, the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the **more rigorous** likelihood of success standard." *No Spray Coalition, Inc. v. City of New York*, 252 F.3d 148, 150 (2d Cir. 2001) (emphasis added).

Plaintiff puts forward two central arguments about why they will succeed on the merits:

1) The student's rights under the stay-put provision pursuant to 20 § U.S.C. 1415(j) entitle the student to funding at Shrub Oak.

2) Pursuant to the Court's equitable powers under 20 U.S.C. § 1415(i)(2)(C)(iii), the Court should award the tuition.

Both of Plaintiff's arguments are wrong.[2]

### A. Plaintiff is Not Entitled to Relief under a Theory of Pendency

Plaintiff is not entitled to education costs for Shrub Oak under a theory of pendency pursuant to 20 U.S.C. § 1415(j). The IDEA's pendency (or "stay-put") provision entitles a child to remain, at public expense, in her "then-current educational placement," or the last placement that the parties agreed upon, while the administrative and judicial proceedings are pending. 20 U.S.C. § 1415(j). The pendency provision's purpose is "to maintain the educational status quo while the parties' dispute is being resolved." *T.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014).

If a parent unilaterally places his or her child at a private school during the course of the administrative hearing, the parent can obtain funding for the placement *after* the IEP dispute is resolved.[3] When a parent alters their child's last-agreed upon educational placement by unilaterally enrolling the child in a private school without first seeking DOE's agreement with the new

---

[2] Defendant does not object to Plaintiff's failure to exhaust their administrative remedies before bringing this action in federal court because Plaintiff alleges a violation of the IDEA's stay-put provision. Plaintiff's Memo of Law in support of Emergency Motion, ECF No.8, at 6-7. *See Ventura De Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 523 (2d Cir 2023) ("An action that alleges a violation of the IDEA stay-put provision falls within one or more of the exceptions to the exhaustion-of-administrative-remedies requirement of the IDEA."). However, the substance of Plaintiff's arguments will illustrate why the administrative channels are best-suited to rule on the merits of whether Shrub Oak is an appropriate placement and, accordingly, whether the student may be entitled to public funding for Shrub Oak's tuition. Further, a lack of objection at this juncture is not a waiver of any future failure-to-exhaust arguments during the pendency of this litigation.

[3] To secure retroactive payment for the unilateral placement, the parent must satisfy the "Burlington-Carter" test, which requires a showing that: "(1) the school district's proposed placement violated IDEA . . . (2) the parents' alternative private placement was appropriate; and (3) equitable considerations favor reimbursement.*" See Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 526 (2d Cir. 2020) (quoting *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 374 (1985)).

unilateral placement, they do so at their own financial risk and are not entitled to automatic public funding under the IDEA's stay-put provision. *See Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 534 (2d Cir. 2020).

*Ventura de Paulino* is the leading case in this Circuit on a fact pattern where, as here, a student's last-agreed upon placement is changed during the pendency of the administrative proceedings and the parent seeks to invoke pendency funding for the new placement. F.3d 519 at 526. In *Ventura de Paulino*, an IHO, like here, found the Burlington-Carter test satisfied – the DOE had denied the student[4] a FAPE; the unilateral placement, iHope, was an appropriate placement; and the equities favored funding the student's tuition at iHope. The DOE did not appeal the IHO's decision; the failure to challenge the IHO decision acted as the DOE's implied agreement and iHope, as an operation of Law, became the parties' last agreed upon placement under pendency. Following the IHO decision, the parent unilaterally enrolled the student in a new placement, iBrain, without DOE's expressed or implied agreement. The reason given for the unilateral change was the parent's dissatisfaction with changes in philosophy or policy at iHope. Shortly, after the student was enrolled in iBrain, the parent filed a DPC seeking funding for the new placement. Plaintiff sought to invoke pendency to pay for iBrain under a theory that this new DPC triggered the IDEA's "stay-put" provision. The Court found that when the plaintiffs attempted to compel the DOE to fund this new school of their choice at immediate, non-refundable public expense, they sought "a 'veto' over school choice rather than 'input'—a power the IDEA clearly does not grant them." *Id.* at 534 (quoting *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 420 (2d Cir. 2009)).

---

[4] Multiple students and their families were plaintiffs in *Ventura De Paulino*. For simplicity and because the fact pattern of all students were substantively the same, I refer to plaintiff in the singular.

Instead, the Court held that it was the DOE that ultimately has the authority to determine a placement under pendency, should the parties disagree. "The stay-put provision [] was enacted as a procedural safeguard in light of the school district's broad authority to determine the educational program of its students .... It does not eliminate, however, the school district's preexisting and independent authority to determine how to provide the most-recently-agreed-upon educational program. *Id.* at 534. The reasoning was that "[a]s a practical matter, it makes sense that it is the party generally responsible for paying a student's agreed-upon educational program—here, the City—who determines how the pendency services are to be provided." *Id.* at 535. Because "public funding for pendency services can never be recouped" and "the cost of educational services in schools can vary dramatically," allowing parents to unilaterally dictate their child's school would impermissibly "frustrate the fiscal policies" of state and local authorities. *Id.* (quoting *Fallis v. Ambach*, 710 F.2d 49, 56 (2d Cir. 1983)).

If the parent disagrees with the last agreed-upon placement, the parent has three options:

(1) The parent can argue that the school district's decision unilaterally modifies the student's pendency placement and the parent could invoke the stay-put provision to prevent the school district from doing so; (2) The parent can determine that the agreed-upon educational program would be better provided somewhere else and thus seek to persuade the school district to pay for the program's new services on a pendency basis; or (3) The parent can determine that the program would be better provided somewhere else, enroll the child in a new school, and then seek retroactive reimbursement from the school district after the individualized education program dispute is resolved. What the parent cannot do is determine that the child's pendency placement would be better provided somewhere else, enroll the child in a new school, and then invoke the stay-put provision to force the school district to pay for the new school's services on a pendency basis.

*Id.* at 534.

Like in *Ventura De Paulino*, Plaintiff has unilaterally enrolled the student in a new school and then invoked the "stay-put" provision to force the school district to pay for the new school's services on a pendency basis before resolving the underlying IEP dispute, which, here, is the

9

pending November 7, 2024 DPC. Courts in this Circuit have consistently applied *Ventura De Paulino* in denying applications for emergency funding similar to Plaintiff's complaint here. For instance, in *S.B. v. N.Y.C. Dep't of Educ.*, No. 21-cv-9356, 2022 WL 220085 (Jan. 25, 2022 S.D.N.Y.) (Vyskocil, J.) plaintiffs had unilaterally enrolled their child in a non-public school that was different than the last-agreed upon placement for the child and then sought funding under the same IDEA provisions invoked here, Judge Vysckocil held that "the Second Circuit forecloses Plaintiffs' arguments that the IDEA permits such action, even if they believe that [the new placement] was a substantially similar placement [to the previous school]."  2022 WL 220085 at * 3. Judge Vyskocil further reasoned that ordering funding for parents like plaintiffs in *S.B.* is "facially prohibited by the IDEA and Circuit case law."  *Id.* at *4.  The result should be no different here. *See also Grullon v. Banks*, No. 23-CV-5797, 2023 U.S. Dist. LEXIS 188079 (Oct. 19, 2023 S.D.N.Y.) (Clarke, J.) (denying similar relief and noting that "until a pendency determination confirming a student's placement is issued, DOE is not obligated to fund that student's tuition or related services.").

 *Davis v. District of Columbia* also well illustrates the principle that the IDEA's stay-put provision does not mandate automatic public funding for a unilateral change in pendency placement. 80 F.4th 321, 327 (D.C. Cir. 2023). The Court found the stay-put provision became inapplicable when changes to the last-agreed upon placement were outside defendants' control.

> In 2021, the residential treatment center where [the student] received special educational services unilaterally discharged him [with a DPC filed by parent a few days before the expected discharge]. Since then, the District of Columbia (the District) has been unable to locate a new residential placement, leaving [the student] without the educational services to which he is entitled. The District has offered [the student] in-home or virtual special education services until it identifies a new residential treatment center available to admit him.

*Id.* at 323.

The parent sought emergency injunctive relief under the stay-put provision, "requiring the District to provide [the student] housing and personnel approximating the services he would receive at [the student's previous residential facility] until a new appropriate residential facility is found that will accept [the student]." *Davis v. District of Columbia*, No. 21-02884 (RJL), 2021 WL 11680748, 2021 U.S. Dist. LEXIS 267158, *2 (D.C. Nov. 19, 2021). The parent argued that the District's replacement educational services that did not conform to a residential placement violated their statutory obligations under 20 U.S.C. § 1415(j). The Court disagreed, finding that the IDEA's stay-put provision was inapplicable in these circumstances because changes to the student's educational services were outside the District's control. *Davis*, 80 F.4th 321 at 327. The Court found ordering the District to take immediate injunctive action to pay for the parent's secondary option was simply not an entitlement under pendency.

> Neither the text of § 1415(j) nor our previous decisions applying the provision impose an affirmative duty on the District to provide an alternative residential environment when a student's then-current placement becomes unavailable for reasons outside the District's control. And [the parent's] attempt to bring a substantive challenge on behalf of her son by invoking the stay-put mandate is procedurally improper because § 1415(j) is not intended to afford parties affirmative relief, on the merits, in the form of an automatic injunction.

*Id.* at 330.

Plaintiff cannot invoke the stay-put provision to secure immediate funding for Shrub Oak -- a placement that alters the status quo -- and ask this Court to endorse Plaintiff's choice without the DOE's implied or expressed agreement through that process. *See Wagner v. Bd. of Educ.*, 335 F.3d 297, 301-02 (4th Cir. 2003) ("Ordering the child to enter an alternative placement [] causes the child not to remain in his or her then-current educational placement, a result that contravenes the statutory mandate [of 1415(j)] and turns the statute on its head by transforming a tool for preserving the status quo into an implement for change."). Plaintiff can and should avail

themselves of administrative due process to make any challenges to pendency, which is the proper forum for this request.

### B. The Court should not award relief pursuant to its equitable powers

The Court should not award relief pursuant to its equitable powers under 20 U.S.C. § 1415(i)(2)(C)(iii). In the alternative to 20 U.S.C. § 1415(j), Plaintiff argues that this case falls into the hypothetical exception outlined in footnote 65 of *Ventura de Paulino*. However, the facts of this case are distinguishable.

Footnote 65 of *Ventura de Paulino* contemplated a fact pattern, not then before the court, where a unilateral change in pendency was driven not by a parent's general dissatisfaction with the last agreed upon placement, but because the last agreed upon placement became unavailable. The Court acknowledged a different holding would be appropriate if: (1) "the school providing the child's pendency services is no longer available" and (2) "the school district either refuses or fails to provide pendency services to the child." *Ventura de Paulino*, 959 F.3d 519 at 534 n.65.

That authority is neither binding or applicable as one condition – a failure to provide an interim placement by the district – is not met here. In *Ventura De Paulino*, the Second Circuit was concerned with the possibility that a school would refuse or neglect to offer a school and a parent, with no other option, would need to locate a school. *Id.* Here, Defendant has identified an interim placement that is available to the parent as they pursue funding at Shrub Oak. Kinsella Decl. ¶ 10. Defendant is willing to provide an educational program as the DPC dispute is resolved.

Critically, footnote 65 of *Ventura De Paulino* cites to *Wagner v. Bd. of Educ. of Montgomery Cty.*, 335 F.3d 297, 302-03 (4th Cir. 2003) as persuasive authority on the applicable law when a pendency placement becomes unavailable. In *Wagner*, the student's last agreed-upon educational services became unavailable through no affirmative choice of either party; the provider

simply stopped providing the services. 335 F.3d at 299. The District Court ordered the school district to provide a similar program to the student to replace the unavailable services. Ruling the District Court erred in its reliance on 20 U.S.C. §1415(j) to grant this injunctive relief, the Fourth Circuit found this relief could still be requested under the Court's equitable powers found in 20 U.S.C. § 1415(i)(2)(B)(iii).[5] Notably, the affirmative equitable relief in *Wagner* allowed the school district to provide the new educational placement. *Id.* at 301-02. The Court did not hold that a parent could unilaterally select replacement services. Ordering immediate funding for Shrub Oak, before the merits of the school are properly adjudicated, gives the parent a singular vote in time-sensitive situations. Further, the Court in *Wagner* acknowledged that the party seeking to invoke the Court's equitable powers had the burden of meeting the high bar set for any preliminary injunction. *Id.* at 302.

To that end, there has been no ruling on the merits of this school and this Court is respectfully not best situated to make a determination on the appropriateness of this placement, especially on such a sparse record. *See M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 246 (2d Cir. 2012) (noting that federal courts should defer to IDEA's administrative judges on matters of educational expertise).[6] While Plaintiff has filed a Declaration from a school official at Shrub Oak, *see* Declaration of Lauren Koffler, ECF No. 6, and a Declaration from the parent, *see* Declaration

---

[5] Because of subsequent amendments, this provision is now found at 20 U.S.C. § 1415(i)(2)(C)(iii).

[6] While Plaintiff alleges similarities between Shrub Oak and Intermountain, this standard does not allow automatic choice by the parent without a ruling on the merits. In the instant circumstances, this standard may also be practically inappropriate because Intermountain failed to address the student's needs; Plaintiff does not allege how a substantially similar placement would provide distinct educational services that can appropriately accommodate the student's disabilities. This concern is pronounced by media that Shrub Oak could be detrimental to the student's development. Either way, this is the exact situation where administrative judges specially trained in educational expertise and likely more familiar with educational placements than this Court should make the determination.

of A-A.B., ECF No. 5, this is far from adjudicating the appropriateness of this placement on the merits. Indeed, other sources suggest Shrub Oak may be an inappropriate or even detrimental placement for the student. *See* ProPublica, "Three States Have Warned Against Sending Students to an Unregulated Boarding School for Youth With Autism," https://www.propublica.org/article/shrub-oak-international-autism-connecticut-washington-massachusetts (accessed Dec. 5, 2024) (noting efforts by advocacy groups to stop public funding of Shrub Oak placements amid reports of poor conditions and alleged mistreatment of students); CBS News Chicago, *Mom wants Chicago Public Schools to stop sending kids to New York special ed boarding school, claims abuse* https://www.cbsnews.com/chicago/news/chicago-public-schools-special-ed-boarding-school-abuse/ (last updated Oct. 29, 2024) (alleging incidents of abuse against students at Shrub Oak). The DOE must have the right to explore the appropriateness of this placement at a hearing. Indeed, there is a likelihood that the parent will not prevail on the merits at the underlying hearing, further highlighting why a preliminary injunction is inappropriate.

The DOE is willing to provide a placement as the DPC is adjudicated and reconvene a CSE meeting to develop a new IEP. Kinsella Decl. ¶¶ 9, 10. Shrub Oak tuition should not be granted in this federal action. *See S.B. v. N.Y.C. Dep't of Educ.*, No. 21-cv-9356, 2022 WL 220085 (Jan. 25, 2022 S.D.N.Y.) (denying equitable relief under 1415(i)(2)(C)(iii) and noting the Court was "extremely reluctant to wade into the realm of merit-based decision making before Plaintiffs have exhausted their administrative remedies").

**C. Plaintiff has failed to show imminent harm or that granting the emergency relief is in the Public Interest**

Plaintiff has failed to show an actual and imminent injury or harm. "Irreparable harm is the single most important prerequisite for injunctive relief, and in the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied." *Uppal v. N.Y. State Dep't of Health*, 756 F. App'x 95, 96 (2d Cir. 2019) (internal citations and alterations omitted). An irreparable harm must be an injury "neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989).

Plaintiff argues the student's pending lack of educational placement constitutes irreparable harm. Plaintiff's Memorandum of Law in Support of her Motion for Emergency Relief, ECF No. 8, at 13-14; ECF No. 19. However, less drastic mitigations exist. Plaintiff has ongoing administrative proceedings that may result in an order that Shrub Oak is indeed appropriate for the student. Plaintiff can request an emergency administrative hearing to expediate these proceedings, given the circumstances. *See* 8 NYCRR Sections 200.5(j), 201.2(f), 201.11. Further, Defendant has offered the student an interim placement as the administrative proceedings progress. Kinsella Decl. ¶ 10. *See Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198 (2d Cir. 2007) (rejecting "emergency situation" argument where the student was expelled, and the administrative review of this determination could provide an adequate remedy). Additionally, according to Plaintiff, the Student is already attending Shrub Oak despite prior indications that Shrub Oak would not accept the Student without an immediate order for funding. Compl. ¶ 59. This squarely undermines the argument of imminent harm, as the student is currently placed at the school they are seeking in an administrative due process hearing.

Finally, Plaintiff has failed to show the public interest will be served by the requested Preliminary Injunction. The public interest favors not providing immediate and indiscriminate public funding to Shrub Oak. "In exercising their sound discretion, courts of equity should pay

particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, (1982). Potentially hundreds of thousands of dollars to an unproven, and indeed questionable, private placement may be both an unnecessary and wasteful use of public expense, especially considering that any such expenditure cannot be recouped following the completion of the administrative proceedings. *See Ventura De Paulino* 959 F.3d at 531.

Defendant does not take Plaintiff's circumstances lightly, and recognizes the challenges and necessity of finding an appropriate placement for the student. Allegations about the student's and their family's safety of course raise serious concerns. However, it does not follow that public funding should be automatically expended on a placement based on minimal discussion on the merits. Less drastic options – such as the DOE's interim placement and expediating the underlying administrative proceedings – are available to the student and their family.

For the foregoing reasons, Plaintiff cannot show that she will succeed on the merits, cannot show imminent harm that will befall her or the student should this Court deny the emergency relief, and such expenditure of funds on an unproven placement would not serve the public. Accordingly, the emergency injunctive relief sought by Plaintiff should be denied.

## II.    Any Awarded Payment Should be Subject to Reasonable Conditions

If the Court were to award Plaintiff's requested emergency relief, which it should not, the tuition payment should be subject to reasonable conditions that allow Defendant to process payment efficiently and within Defendant's established parameters for such payments. *See Mendez v. Banks*, 65 F.4th 56, 63 (2d Cir. 2023) ("[T]he DOE receives thousands of funding requests under the IDEA at the start of each school year and spends hundreds of millions of dollars annually to

fund placements. [] Any agency will need some amount of time to process and pay submitted invoices. If each pendency order entitled parents or guardians to immediate payment, school districts would be unable to implement basic budgetary oversight measures, such as requiring receipts before reimbursement.").

Accordingly, if any immediate funding is awarded, Defendant respectfully asks the Court to condition tuition payment on the below.

1. Plaintiff shall provide Defendant New York City Department of Education the following documents for the purpose of issuing payment to Shrub Oak: (i) Affidavit from Shrub Oak identifying the period of the student's enrollment, as well as any costs and balance; (ii) a signed contract between Plaintiff and Shrub Oak; (iii) the student's attendance records from the date of his enrollment at Shrub Oak and going forward on a monthly basis; (iv) monthly invoice and/or itemized invoice from Shrub Oak relating to the student 's enrollment thereto; and (v) an IRS Form Substitute W-9 from Shrub Oak.

2. Plaintiff shall respond as expeditiously as possible to any document and/or information request from Defendant.

3. Defendant will have a reasonable time to review and issue payment.

4. Should the student be removed from Shrub Oak, Defendant will only pay for dates of attendance and can recoup any excess funds paid.

5. These conditions will be in effect until the DPC is adjudicated.

17

## **CONCLUSION**

For the reasons set forth above, the Court should deny Plaintiff's request for a Temporary Restraining Order and a Preliminary Injunction, and grant Defendant such other and further relief as it deems just and proper.

Dated: New York, New York

December 6, 2024

_____/s/_____

Jordan Doll
Assistant Corporation Counsel